**UNITED STATES of America, Appellee,**

v.

**Rede Thomas BAD COB, Appellant.**

**No. 76–1887.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1977.

Decided July 29, 1977.

Edward C. Carpenter, Rapid City, S. D., on brief for appellant.

Brian D. Hagg, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; William F. Clayton, U. S. Atty., on brief.

Before LAY and STEPHENSON, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The appellant (hereafter defendant), an Indian, was indicted for the larceny of a cow of a value of more than $100, on the Pine Ridge Indian Reservation, in violation of 18 U.S.C. §§ 661 & 1153. He was found guilty after a jury trial. We affirm.

On May 25, 1976, the defendant, with two companions, was "riding around" in a blue and a white Ford pickup truck, which belonged to James Moves Camp, when, according to defendant's confession, he saw a cow. Having had, he guessed, "a little too much wine," he shot the cow "[m]any times." Once the cow had been shot, "we decided we better do something with it, we might as well butcher it. Eventually we drug it back beyond James Moves Camp's house."

In the early evening of this day, rancher Stanley Porch, flying over his pasture, observed a blue and white pickup truck, in the

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

pasture, heading toward the James Moves Camp residence. It had a slaughtered beef in the rear box. The BIA police were summoned, and they found the pickup in a creek bed with its former occupants hiding nearby. The butchered cow, which was later identified as belonging to rancher Rex Riggins, was found behind the Moves Camp residence.

Defendant and his companions, Reed Red Kettle and Vernon Moves Camp, were taken into custody by the BIA police, and driven to the Kyle substation, where they were transferred to another police car, and driven to the Pine Ridge jail. During the drive to the Kyle substation, Officer Bull Bear overheard defendant saying to Vernon Moves Camp, "I shot the cow. I will take the blame for it."

On the day following his arrest, after having been released on bond, defendant made a statement to the FBI agents describing in detail his involvement in the crime. After a lengthy hearing on defendant's motion to suppress, which was denied, the trial court held the confession to be voluntary.[1] This confession was not impeached at the trial.

It was argued in the defense of the case that the defendant was too intoxicated at the time of the offense to form specific intent, that defendant's confession was involuntary, and that the government failed to sustain its burden of proof. There is no need that we recite in detail the testimony as to the defendant's degree of intoxication. The court properly instructed the jury as to the bearing of intoxication upon the offense, and upon the elements of the offense as well, and no objections were made thereto. The jury found the defendant guilty, and he was sentenced by the court to imprisonment for 18 months with the recommendation that he "be placed where he can receive treatment for alcoholism and that a

report be furnished to the Court within 120 days."

■ Defendant's claims of error are directed both to the trial court and to his counsel. With respect to the trial court, one of the asserted errors concerns its handling of the jury. The jury panel having been exhausted, counsel stipulated that the last juror to have been preemptorily challenged, Mr. Keil, might sit as the alternate. The record fully establishes that the defendant knowingly, and intelligently, acquiesced in the voluntary stipulation of his counsel. The stipulation entered into by appellant's counsel in the presence of the appellant, who expressed no dissent therefrom, is effective and binding upon the appellant.[2]

At the conclusion of the trial, which had lasted longer than expected, one of the jurors, Mr. White, was discharged for what was deemed reasonable cause, the alternate juror taking his place. Both counsel and the defendant acquiesced in this juror's release.

■ The discharge of Mr. White for reasonable cause was within the discretion of the court.

The substitution of an alternate for a juror for reasonable cause is within the prerogative of the trial court and does not require the consent of any party. *United States v. Ellenbogen,* 365 F.2d 982, 989 (2d Cir. 1966), *cert. denied,* 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967). We note, moreover, that defendant has made no showing of prejudice with respect to the sitting of Mr. Keil as the alternate juror or to the dismissal of Mr. White for reasonable cause. There was no error in the procedures adopted.

■ It is charged also that the trial court erred in excluding evidence relating to a

---

1. The trial court found "that the Miranda warnings were given, that the Defendant knowingly and intelligently waived his privilege against self-incrimination, and that he voluntarily, knowingly, and intelligently waived his rights [sic] to have retained or appointed counsel present at the interrogation, and that whatever

statements were made, whether termed admissions or confessions, were freely and voluntarily made."

2. *Leser v. United States,* 358 F.2d 313, 317 (9th Cir.), *cert. dismissed,* 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49 (1966).

rifle seized from the James Moves Camp residence. FBI Agent Diem testified that he removed a rifle from the Camp residence, but did not know whether it was the rifle used to kill the cow. Moreover, there was no evidence connecting the seized rifle to the defendant or to any other identified person. Objections to defendant's questions relating to the rifle were sustained by the trial court on the ground that such questions were irrelevant. The court, at the conclusion of Diem's testimony pertaining to the rifle, instructed the jury that it was to disregard any question concerning "the existence of a weapon," as immaterial, and pointed out to the jury, at the conclusion of Diem's testimony, that the charge was larceny and that "there is no evidence tying whatever weapon the Agent may have had with any person, so therefore you are to disregard it."

■ There is no error in these rulings. The trial court has a broad discretion in determining the relevancy and admissibility of evidence, *United States v. Williams,* 545 F.2d 47, 50 (8th Cir. 1976); *United States v. Johnson,* 516 F.2d 209, 214 (8th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85 (1975), and to complicate an essentially simple case of larceny with evidence as to the operability and ballistics of a rifle of unknown origin and ownership is clearly an exercise in futility.

■ We come now to the charge of ineffective assistance of counsel. In view of the frequency with which we confront this charge, we have recently undertaken a painstaking review of the problem. The standard established by our prior decisions is "that trial counsel fails to render effective assistance when he does not exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances."[3] In addition, to support an allegation of ineffective counsel, it must be established that defendant was prejudiced thereby.

[J]udges must still make a legal judgment as to whether, in face of the allegations made and the proof adduced, the defendant was materially prejudiced in the defense of his case by the actions or inactions of his counsel.[4]

In support of the charge of ineffective assistance, defendant first argues that his counsel had insufficient time for preparation, the court having denied, without formal opinion, counsel's motion for continuance, which was filed less than a week prior to the scheduled trial date. It appears from the record that trial counsel was appointed on June 24, 1976, and represented defendant for the first time at arraignment on the same day, over a month before the commencement of defendant's trial on July 28, 1976. In the meantime, an extensive hearing on the motion to suppress had been held in this essentially simple case, in which counsel displayed complete familiarity with the details of the offense and the significant evidence with respect thereto. In addition, counsel has not pointed to any evidence which was available, but not discovered due to shortage of time. *See United States v. Turner,* 551 F.2d 780, 782 (8th Cir. 1977), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2660, 53 L.Ed.2d 262 (1977); *United States v. Crow Dog,* 537 F.2d 308, 309 (8th Cir. 1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977).

■ The matter of continuance is one addressed to the discretion of the trial court. Upon this record we can not say that discretion was abused or that defendant sustained prejudice by being required to go to trial on the specified date. *United States v. Paulton,* 540 F.2d 886, 890 (8th Cir. 1976).

With the sole exception of the charge that defendant's counsel had insufficient time for preparation, the entire attack on counsel's competence concerns her trial tac-

---

3. *United States v. Easter,* 539 F.2d 663, 666 (8th Cir. 1976) (footnote omitted) (Henley, J., concurring).

4. *Id.* (quoting *Crismon v. United States,* 510 F.2d 356, 358 (8th Cir. 1975)). *See also Harshaw v. United States,* 542 F.2d 455, 457 (8th Cir. 1976); *Pinnell v. Cauthron,* 540 F.2d 938, 943 (8th Cir. 1976).

tics. We approach such allegations with the realization that it is not difficult after contemplation and searching analysis of the record of a trial to find imperfections and irregularities therein and to conclude that both the trial judge and losing counsel might well have done a better job.

■ As in *United States v. Hager,* 505 F.2d 737, 739 (8th Cir. 1974), the assertion of the defendant here is that his counsel made mistakes in the *conduct* of the defense during the trial itself. However, this attack runs directly into the precept stated in *Robinson v. United States,* 448 F.2d 1255, 1256 (8th Cir. 1971), and expressly reaffirmed in *McQueen,*[5] *supra,* 498 F.2d at 216, that in choosing trial tactics "the exercise of a defense attorney's professional judgment should not be second-guessed by hindsight. . . ." A wrong or poorly advised decision by a defense attorney is not alone enough to support a subsequent claim of ineffective counsel. *Robinson v. United States, supra,* 448 F.2d at 1256. Analysis of the arguments advanced by Ms. Hager indicate clearly that she is asking us to do what this Court has expressly refused to

do—second-guess by hindsight the trial tactics utilized by the defense attorney. (Emphasis in original).

We expressed our views similarly in *Robinson v. United States,* 448 F.2d 1255, 1256 (8th Cir. 1971), when we held that

Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel. [Citing cases.]

It is with such considerations in mind that we examine the trial errors alleged. We will comment only on those involving some precedential merit.

■ The most serious of the charges made against defense counsel is that she "failed to object to improper references to appellant's refusal to take a lie detector test and said improper references constituted plain error." The entire record with respect to this incident will be found in the margin hereof.[6]

---

**5.** *McQueen v. Swenson,* 498 F.2d 207 (8th Cir. 1974) (footnote ours).

**6.** On direct examination of Agent Diem by government's counsel, the following testimony was elicited:

Q  After you finished reading his rights to him, what happened after that?
A  I asked him if he would tell me about what had occurred near Wanblee on the day before. He indicated to me that he didn't want to talk about it and that he had nothing to do with it.
Q  Then what did you say after that?
A  After that I asked him if that was in fact the case, would he be willing to submit to a lie detector test, a polygraph, and he seemed to know what it was. He answered he did not want to take a lie detector test.
Q  Did you have further conversation?
A  Yes. At this point he seemed to get slightly nervous. He fidgeted around in his chair a little bit, didn't speak to us for several minutes, and then he said to me something to the effect that—
MS. STUMP: Your Honor, excuse me. May I ask a few questions for the purpose of an objection, or may I approach the bench, first of all, Your Honor?

THE COURT: Yes.
(An off-the-record discussion was had at the bench.)
Q  Do you recall where you left off? Repeat your answer. Can you reorient the Court, please? I don't know where we left off.
A  I asked him about the polygraph and he stated to me that he did not wish to take the polygraph, and at this point he became slightly nervous, was fidgety in his chair. Several minutes passed and he said, "All right. I am willing to talk about it. It doesn't seem to be a serious matter anyway. I might as well tell the truth and get it over with."
Then he said "I did it. I shot the cow." I then asked him to be more specific. I asked him specific questions, where it happened, how it happened, and he asnwered [sic] those questions.
Trial Transcript (hereafter Tr.) 135–36.
On cross-examination of Agent Diem by defendant's counsel, the following testimony was elicited:
Q  When during the questioning did Rede appear to become nervous to you?
A  If I recall correctly, it was after I asked him about taking a polygraph examination.

No question is here presented as to the acceptance or rejection of the results of a lie detector test. We explored that topic exhaustively in *United States v. Alexander,* 526 F.2d 161 (8th Cir. 1975),[7] and ruled against the admission of such evidence under the facts there presented. Rather, the precise charge here made relates to defense counsel's alleged failure to object to testimony adduced by the government from Agent Diem that defendant refused to take such a test, from which the conclusion urged upon us is that such failure is evidence of incompetence. It is clear, however, that such failure to object did not arise from ignorance of counsel[8] as to a possible objection,[9] but the suggestion, per contra, is that it was a part of counsel's trial strategy, designed to lay a foundation from which to argue the involuntariness of defendant's confession to the FBI,[10] an argument which, as we have noted, had been ruled upon adversely to defendant in the court's ruling on the defendant's motion to suppress. Such strategy, if, indeed, that was her strategy, namely, that such evidence "had a material bearing upon the conditions leading to [the] confession and was relevant upon the vital question as to whether the same was voluntary," [11] cannot reasonably be deemed evidence of incompetency, since upon this record it "involve[s] a plausible strategic reason for failing to object." [12]

■ Defendant also cites as evidence of incompetence that upon his direct examination his counsel brought out that he had previously been convicted of third degree burglary, that he had been sentenced to probation for one year, and that he had successfully completed that one year of probation, the defendant gratuitously adding, "And the Judge says after I finish my probation that there will be no felony record against me." Defendant argues to us, and the government agrees, that there is a South Dakota statute, neither cited nor quoted in the briefs nor in oral argument, which would have prevented the government from bringing out defendant's conviction on cross-examination for impeachment

Q And he became nervous after you asked him that question?
A Yes.
Q How much longer after you asked him that question did he again speak?
A I believe I indicated it was several times. Tr. 157–58.

7. *See also* cases and authorities therein cited, including, *United States v. Oliver,* 525 F.2d 731 (8th Cir. 1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976).

8. "MS. STUMP: Your Honor, excuse me. May I ask a few questions for the purpose of an objection, or may I approach the bench, first of all, Your Honor?" Tr. 136.

9. The bench conference was not reported.

10. The argument is not without support in the record. *See* the testimony quoted in note 6, *supra.* Note especially that during cross-examination, Tr. 157–58, defense counsel pursued the point that defendant became nervous after he was asked to take the polygraph test.

The use of a defendant's refusal to take a polygraph test for the purpose of showing that his confession was involuntary is not unprecedented. *See Tyler v. United States,* 90 U.S. App.D.C. 2, 193 F.2d 24, 31 (1951), *cert. denied,* 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326 (1952), wherein the Court held as follows:

During the testimony of Captain Curley, counsel for Tyler moved at the bench to strike the same, especially that part covering Curley's statement to Tyler that the lie detector machine indicated he was lying. The court denied the motion, adopting the view that the testimony was relevant as revealing circumstances leading to the confession, although not as proof of the correctness of Curley's statement. * * * [T]he court * * * informed the jury that, "The statement of the witness that he told the defendant that the machine indicated he was lying is not admitted as evidence of any alleged lying of the defendant, but merely as evidence bearing upon the question whether the confession was, in fact, voluntary." * * * We think the ruling was correct. This court has held the results of a lie detector test to be inadmissible. *Frye v. United States,* 1923, 54 App.D.C. 46, 293 F. 1013. We do not mean to impair that ruling. But here the circumstances are different. The evidence had a material bearing upon the conditions leading to Tyler's confession and was relevant upon the vital question as to whether the same was voluntary.

11. *Tyler v. United States, supra.*

12. *Agee v. Wyrick,* 546 F.2d 1324, 1327 (8th Cir. 1976).

purposes under the provisions of Rule 609(c)[13] of the Federal Rules of Evidence.

The introduction by a witness himself, on his direct, of a prior conviction is a common trial tactic, recommended by textwriters on trial practice.[14] There is a paucity of authority justifying in theory this well accepted practice, but it has been justified on the ground that it serves a twofold purpose: (a) to bring out the witness' "real character," the whole person, particularly his credibility, and (b) to draw the teeth out of the adversary's probable use of the same evidence on cross-examination.[15]

Because both counsel concede that the government was prohibited by Rule 609(c) from bringing out defendant's prior conviction on cross-examination for *impeachment* purposes, the second of the two reasons stated above for bringing out a prior conviction on direct examination does not justify defense counsel's action. However, we think defense counsel's action may be explained and justified by the first of two reasons stated above, namely, as bearing upon the credibility of her client. Hindsight may or may not condemn such trial strategy but there was a plausible reason for its employment and we do not characterize its use as evidence of incompetence.

We need not burden this opinion further with an extended discussion of other allega-

tions asserted to manifest incompetence. They are inconsequential. It was doubtless error to permit testimony from witness Guy Dull Knife as to what his wife told the FBI concerning the exact time she and her husband had seen defendant in the back of the pickup truck. However, the precise time of this sighting was of no significance on the merits of the case. The argument made as to the failure of counsel to attempt to impeach Agent Bull Bear on the intoxication issue is equally without significance in view of the voluminous intoxication testimony.

In sum, we are not persuaded that the trial tactics employed by defendant's counsel evidenced her incompetence under our previously enunciated standards. Although the result of the trial was her client's conviction, we are satisfied that he received a fair trial.

■ We are constrained to add, moreover, that even though the view be taken that a more strenuous objection to the refusal of defendant to take a polygraph test should have been made, together, possibly, with motion for mistrial, the critical requirement of the showing of prejudice is missing.[16] Here, it is inconceivable that in the light of defendant's confession, and the overwhelming proofs against him, that the verdict would have been otherwise had the

---

**13.** "(c) *Effect of pardon, annulment, or certificate of rehabilitation.* Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence."

**14.** *See* F. Bailey & H. Rothblatt, *Successful Techniques for Criminal Trials* § 253 (1971); I. Goldstein & F. Lane, *Goldstein Trial Technique* § 11.30 (2d ed. 1969); I. Mendelson, *Defending Criminal Cases* 92 (rev. ed. 1967).

**15.** *Vause v. United States,* 53 F.2d 346, 351 (2d Cir.), *cert. denied,* 284 U.S. 661, 52 S.Ct. 37, 76 L.Ed. 560 (1931); *United States v. Vanco,* 131

F.2d 123, 125–26 (7th Cir. 1942), wherein the court held:

> [T]he Government witness * * * was permitted to testify on direct examination that he had previously been convicted of other serious crimes * * *
>
> * * * Such testimony was properly admitted by the court as bearing on the credibility of the witness. Undoubtedly such admissions might have been properly educed by appellant on the cross-examination of that witness as affecting his credibility, and this no doubt would have been done by appellant, had the Government failed to do so. The Government therefore was warranted in anticipating such cross-examination and in eliciting such testimony on direct examination. Such a method of procedure is quite well recognized and approved.

**16.** *United States v. Easter, supra; Harshaw v. United States, supra; Pinnell v. Cauthron, supra.*

polygraph questions not been asked and answered. In addition, there was here no exploitation of the question or its answer. The same observations apply to the only other "error" of any possible merit, the evidence as to the prior burglary conviction. We are not disposed to accord these incidents, lacking constitutional dimensions upon this record, a significance on appeal that they were not accorded at trial.

Affirmed.