**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Mark Wayne PIESCHKE, Defendant and Appellant.**

**No. 11987.**

Supreme Court of South Dakota.

Jan. 25, 1978.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Derald W. Wiehl of May, Johnson, & Burke, Sioux Falls, for defendant and appellant.

WOLLMAN, Justice.

Defendant was charged with aiding and abetting the commission of the crime of robbery in the first degree. He was found guilty by a jury of the offense of robbery in the second degree and has appealed from the judgment of conviction entered on the verdict.

On the night of October 19, 1975, one Wesley Cochrun pointed a gun at a checkout clerk at the Kwik-Chek grocery in the city of Sioux Falls, told the clerk that it was a hold-up and that he wanted all of the money, and threw a pillow case at her. Cochrun was wearing a stocking cap, gloves, and a green coat. The clerk put the money into the pillow case, whereupon Cochrun ran out the back of the store and apparently fled in a waiting car.

On December 23, 1975, Detective John Johnson and Sergeant Edward Corbett of the Sioux Falls Police Department went to Huron, South Dakota, to arrest defendant on a warrant issued on the charges stemming from the October 19 robbery. The officers read the warrant of arrest to the defendant and advised him of his *Miranda* rights. Defendant indicated that he understood those rights and that he was willing to talk to the officers. In response to the officers' questions, defendant admitted that he had participated in the October 19 robbery by driving the car and by giving Cochrun the gun that the latter had pointed at the check-out clerk. Defendant stated that he had stolen the gun from his stepfather, who lived in Huron, and that he had stolen the getaway car, which he described as a blue, 1964 Chevrolet with a beige front end, at a point on West 13th Street in Sioux Falls on the night of the robbery and had later abandoned it on a Sioux Falls street after the robbery. Defendant described the gun as a .357 Magnum with a long barrel and pearl grips. He told the officers that he had put the gun into a mailbox in Sioux Falls after abandoning the getaway car. Defendant stated that he had received a couple of hundred dollars as his share of the proceeds of the robbery.

One of the state's witnesses, Debra Ann Jacobson, testified that defendant had told her that he had had a car and had dropped it off after the robbery. Miss Jacobson also testified that on the evening of the robbery she had observed Wesley Cochrun at a friend's house dressed in what she described as mechanic's clothing and a stocking cap. His face had been greased and dirtied. Cochrun and his companions left the house. They returned later accompanied by defendant and went into the basement. Defendant later told Miss Jacobson that ". . . he thought that he got ripped off of some money," inasmuch as he had "read that there was 900 taken and he only received a hundred from it, five or something."

Another witness for the state testified that on the morning of October 20, 1975, she had discovered that her automobile, a 1964 blue Chevrolet with a beige front end, was missing from where she had parked it on the street at her residence at 719 West 13th Street in Sioux Falls. She was informed by the police on October 21 that her car had been recovered.

The trial court admitted into evidence a Colt Python .357 Magnum handgun having a six-inch barrel and bearing serial number 3893. This weapon had been turned over to the Sioux Falls police on December 3, 1975, by a third party at the request of Sergeant Corbett, who had been notified that a .357 Magnum bearing serial number 3893 had been reported stolen in Huron on or about October 21, 1975. Sergeant Corbett testified that there was a connection between the .357 Magnum that had been marked as an exhibit, and which was later admitted by the trial court into evidence, and defendant's stepfather, but on objection by defendant he was prevented from testifying concerning the nature of that connection.

Defendant, who was 19 years of age at the time of trial, took the stand in his own behalf. He acknowledged that he had pled guilty to a charge of third degree burglary when he was 17 years old and had been sentenced to serve two years in the reformatory section of the state penitentiary. Although he admitted that he had been living at the same address as Miss Jacobson in October of 1975, along with some of the other individuals whom Miss Jacobson identified in her testimony, he denied having participated in the October 19th robbery in any way. He acknowledged on cross-examination that he had cleared up one or two car thefts for Detective Johnson and Sergeant Corbett at the time they interrogated him in the Minnehaha County Jail after he had been returned to Sioux Falls from Huron. Specifically, he admitted telling the officers that he had stolen a Mustang automobile in the early summer of 1975. Defendant could not remember the details concerning the other auto theft, other than that it had occurred after the theft of the Mustang.

Following his testimony, defendant called as a witness Michael Husen, one of the men who was living with the defendant at the time of the robbery. Mr. Husen, who was an inmate at the state penitentiary at the time of trial, apparently appeared in the courtroom wearing handcuffs, for defense counsel inquired of the trial court after the witness had been sworn, "Your Honor, must he have the cuffs on to testify?" The trial court replied, "There is no reason to take them off, as far as I know," to which defense counsel responded, "All right," and then proceeded with his examination. The substance of Mr. Husen's testimony was that he did not recall that defendant had made any admissions that he had had anything to do with the robbery. The state asked no questions of Mr. Husen on cross-examination.

■ Defendant's first contention on appeal is that his rights were violated when the trial court refused to require the state to disclose the identity of the informant whose information led the police to link the defendant with the robbery. Although defendant cites *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, in support of this contention, we think that his reliance upon that case is misplaced, for the testimony regarding the tip received from the informant was of significance only in explaining why the Sioux Falls police had secured a warrant for defendant's arrest on the robbery charge and was not introduced for the purpose of establishing defendant's guilt on that charge. Indeed, it was only at defense counsel's insistence that the state asked the officers any questions regarding the informant's tip. Moreover, even if the identity of the informant was somehow material to defendant's case, the record reveals that during the chambers conference on defendant's request that the state establish defendant's connection with the offense before questioning the officers regarding defendant's admissions, the Deputy State's Attorney stated:

"During the recess I was able to learn that the informant that police officers relied on has been subpoenaed. A subpoena was handed to the Sheriff in another county, at least. I'm having the police officer now make sure it was served. Our information this morning was that person was on her way and expected to arrive at 9:30 and now that's where we are at in view of the Court's ruling."

This witness was obviously Miss Jacobson, for on her direct examination she testified that she had told Detective Johnson and another officer about her conversations with defendant. There is no evidence that the officers relied on any informant other than Miss Jacobson with respect to the charges against defendant; consequently, we do not understand how defendant can be heard to complain that he did not learn of the informant's identity.

■ Defendant's next claim of error is that the introduction of evidence tending to show that he had committed several other crimes unrelated to the offense charged was plain error that necessitates reversal of the conviction. Two answers suffice to meet this contention. First, we do not recognize the plain error doctrine. *State v. Barr*, S.D., 232 N.W.2d 257. Second, we note that the theft of the gun and the automobile used in the commission of the robbery were not such unrelated offenses that they had no bearing upon the offense charged. Defendant admitted during his direct testimony that he had previously been convicted of third degree burglary. This was a perfectly sound bit of trial strategy, given the fact that no doubt the state would have inquired into the prior conviction early on during cross-examination. The testimony during defendant's cross-examination concerning the fact that he had admitted two prior auto thefts to the investigating officers came in without objection, as did Debra Jacobson's testimony that defendant and Michael Husen had been charged along with Miss Jacobson with the theft of an automobile belonging to one Irene Curtis. We note that Miss Jacobson testified that only Michael Husen was convicted of that offense.

Defendant contends that there was insufficient foundation laid to warrant admitting the .357 Magnum handgun into evidence. Admittedly, the state did a rather inept job of laying the foundation for the admission of this exhibit. For example, the state did not ask the check-out clerk whether the gun that was pointed at her during the robbery resembled that which the police had recovered from the third party in Sioux Falls. Moreover, the state did not establish how the weapon had come into the hands of the third party. Additionally, the testimony identifying the gun as that stolen from the defendant's stepfather was presented in a sketchy, attenuated manner.

Notwithstanding all of the state's shortcomings in establishing a foundation for the introduction of the exhibit, we conclude that the trial court did not err in admitting the gun into evidence. Although an instrument allegedly used in connection with the commission of a crime should not be admitted if the connection is too remote or conjectural, so long as the proof renders reasonable the inference that the evidence was connected with the defendant or the crime charged the evidence is admissible. *State v. Pickering*, S.D., 217 N.W.2d 877. When measured against this standard, we conclude that the foundation laid was sufficient. Defendant told the officers that he had stolen a .357 Magnum from his stepfather, that the gun had been used in the robbery, and that after the robbery he had put the gun into a mailbox. The gun that was turned over to the officers by the third party bore the serial number of the gun that had been reported stolen in a burglary at Huron on or about the time of the robbery in Sioux Falls. It also matched the description given by defendant of the gun that he had stolen from his stepfather. The jury could reasonably have inferred from all of this that the gun marked as an exhibit was the gun stolen at Huron and used in the robbery.

Defendant contends that the trial court erred in refusing to allow the removal of the handcuffs prior to Michael Husen's testimony. Granted that the trial court should have granted a properly framed request that the witness's handcuffs be removed prior to his appearing in the presence of the jury, absent some showing that it would have been dangerous to those present to free the witness from the handcuffs, no such request was made. By the time defense counsel referred to the fact that the witness was handcuffed, the witness had already been sworn to testify. It is doubtful that the removal of the handcuffs in the presence of the jury would have served to erase whatever adverse connotation the presence of the handcuffs had already etched in the minds of the jurors. Moreover, defense counsel did not respond to the trial court's statement that as far as the court knew there was no reason to remove the handcuffs, other than to apparently acquiesce in the court's statement and proceed with his direct examination. Finally, the nature of the witness's testimony was such that we are persuaded that even if the trial court erred in not translating defense counsel's rather ambiguous inquiry into a specific request that the handcuffs be removed and in then denying the request, it was harmless error. In substance, the witness testified that he could not recall that defendant had ever admitted to anyone that he had had anything to do with the robbery. Even if accepted as true, this testimony would have established only what the witness testified to and would not have constituted proof that defendant had not participated in the robbery.

Defendant's final claim of error is that he was denied his constitutional right to the effective assistance of counsel at trial. Unquestionably, a defendant in a criminal case is entitled to adequate and effective counsel, and a mere perfunctory and casual representation does not satisfy the constitutional guaranty to the effective assistance of counsel. See *State v. Goode,* 84 S.D. 369, 171 N.W.2d 733, and cases cited therein. The performance of this solemn duty of effective representation carries with it the duty to exercise professional judgment, for

**46**

"The right of an accused to the services of legal counsel envisages that his attorney will investigate and consider possible defenses and, if none, other procedures, and exercise his good faith judgment thereon. It does not contemplate that an accused may take charge of the case after an attorney has been appointed, or dictate its course, or make counsel's educated judgment the pawn of an unreasonable and obdurate malefactor." *State ex rel. Burns v. Erickson,* 80 S.D. 639, 646, 129 N.W.2d 712, 716.

As will be noted below, defendant through his present counsel attacks his trial counsel's failure to make certain motions and objections and to request certain instructions. Some of these allegations concern counsel's trial tactics. The Court of Appeals for the Eighth Circuit recently wrote of post-trial attacks on trial counsel's tactics in the following words:

". . . We approach such allegations with the realization that it is not difficult after contemplation and searching analysis of the record of a trial to find imperfections and irregularities therein and to conclude that both the trial judge and losing counsel might well have done a better job." *United States v. Bad Cob,* 8 Cir., 560 F.2d 877.

We approach defendant's allegations in the instant case with the same realization. We also note that defendant's trial counsel formerly held the office of Minnehaha County State's Attorney and in such office tried criminal cases of far greater complexity than the instant case. See, e. g., *State v. Pickering,* 87 S.D. 331, 207 N.W.2d 511. It would not be an unwarranted assumption to say that trial counsel was involved in numerous preliminary hearings, pre-trial motions to suppress, and jury trials of serious felony cases during his tenure as prosecutor and that he was no neophyte in the field of criminal law. Cf. *United States v. Easter,* 8 Cir., 539 F.2d 663.

■ We turn, then, to the specific instances in which trial counsel was alleged-

ly derelict in his responsibility to provide effective assistance to defendant. First, defendant attacks trial counsel's failure to move to suppress defendant's alleged confession. It is noteworthy, however, that both officers testified that they had advised defendant of his *Miranda* rights before questioning him and that defendant had agreed to answer their questions. Defendant acknowledged that the officers had advised him of his rights. He did not deny that he understood those rights but testified at trial that the officers had ignored his request for an attorney. We have no way of knowing what defendant told his attorney before trial concerning the circumstances surrounding the interrogation in Huron, however. The purpose of the *Miranda* decision * is to insure that no confession should be admissible unless an in-custody suspect is first advised of the rights enumerated in the decision, understands those rights and then agrees to waive those rights and answer questions. If defense counsel is satisfied from what he has been told by his client that the conditions imposed by the *Miranda* decision were fully met, why should defense counsel be obligated to engage in a futile attempt to establish by means of his client's perjury that those conditions were not met? Granted that defense counsel might be under an obligation to move to suppress a confession if advised by his client that any of the requirements of the *Miranda* decision had not been fulfilled, notwithstanding defense counsel's personal skepticism of his client's version of the events surrounding the interrogation, in the absence of any record evidence in the instant case that defense counsel had any reason to believe prior to trial that the dictates of the *Miranda* case had not been fully complied with we are not disposed to assume that counsel had information that would have made it incumbent upon him to make a pre-trial motion to suppress defendant's confession.

■ Defendant also attacks his trial counsel's failure to attempt to exclude the testimony regarding defendant's participa-

* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

tion in other unrelated offenses. As we have already stated, however, the theft of the handgun and automobile used in the commission of the robbery were not so unrelated to the robbery as to be excludable. We can be sure that had the state not attempted to show the full extent of defendant's participation in the robbery, defendant would be complaining of the insufficiency of the evidence to link him to the commission of the offense. Defense counsel's failure to object to the state's questioning defendant with respect to the two auto thefts that he had committed in the summer of 1975 may very well have been a trial tactic designed to persuade the jury that defendant was willing to admit to those crimes that he had in fact committed but that he was unwilling to admit to those in which he had not participated. Indeed, on redirect examination defense counsel asked defendant, "You admitted these two other car thefts because you did it . . . [a]nd you deny having anything to do with the armed robbery?"

■ Next, defendant attacks his trial counsel's failure to propose instructions regarding the jury's duty to determine the voluntariness of defendant's confession, see S. D. Pattern Jury Instructions (Criminal) 1–16–2, and the extent to which the jury should consider evidence of the commission of crimes other than those charged against defendant, see Pattern Jury Instructions (Criminal) 1–16–8. We note, however, that defense counsel did propose, and the trial court did give, an instruction to the effect that defendant could not be convicted unless there was some proof of each element of the offense charged independent of any confession or admission made by the defendant outside of the trial. See Pattern Jury Instructions (Criminal) 1–16–3.

■ In view of the admissibility of the testimony regarding the theft of the gun and the getaway car, and in view of defense counsel's probable trial strategy in seeking to establish defendant's credibility by proof of his truthfulness in admitting the 1975 auto thefts, we cannot say that defendant was denied the effective assistance of counsel by virtue of his attorney's failure to request an instruction regarding the legal effect of evidence regarding the commission of other offenses.

■ Trial counsel's failure to request an instruction on the jury's duty to weigh the truthfulness of defendant's confession presents a closer question. Even if trial counsel was derelict in his duties in not requesting such an instruction, however, we must decide whether defendant was prejudiced by the absence of such an instruction. SDCL 23–1–2. We conclude that he was not. In reaching this conclusion we note that the state verified the truthfulness of defendant's confession by introducing evidence that established that a .357 Magnum handgun had been reported stolen in Huron on or about the date of the robbery; that a gun had been used in the robbery; that an automobile matching the description given by defendant had been stolen from the location stated by defendant; that defendant had returned with Wesley Cochrun, the person who had taken the money from the check-out clerk; and that defendant had admitted to Debra Jacobson that he had stolen the car for use in the robbery and that he had received some money, albeit not his fair share, out of the fruits of the robbery. When viewed in the light of this corroboration, the truthfulness of defendant's confession is not open to serious question. Perhaps it was for this reason that trial counsel asked for no instruction on the question of the truthfulness of the confession, just as he did not move to suppress the confession prior to trial. In any event, the absence of the request for the instruction in question does not mandate that defendant's conviction be reversed.

To summarize our observations concerning defendant's contention that he was denied the effective assistance of counsel at trial, we note that the offense charged against defendant was relatively simple in its factual and legal aspects. There seems to be no question but that Wesley Cochrun committed an armed robbery at the time and place charged. The Sioux Falls police received information that defendant had

been involved in the robbery. Two police officers interrogated defendant under circumstances which the record shows to have comported with the dictates of the *Miranda* decision. Defendant made responses to the officers' questions that amounted to a confession that he had aided and abetted in the commission of the robbery by furnishing the weapon used in the commission of the offense and the automobile that was used to transport the perpetrator of the offense to and from the scene of the crime. He also acknowledged that he had received a portion of the fruits of the crime. Defendant's confession was verified in all important details by other testimony. Although some of trial counsel's decisions regarding trial tactics may now appear in the clear light of hindsight to have been unwisely made, given the fact that they did not result in success, those decisions, either singly or cumulatively, do not support defendant's contention that he was denied the effective assistance of counsel.

The judgment of conviction is affirmed.

DUNN, C. J., concurs.

PORTER, J., concurs specially.

MORGAN and ZASTROW, JJ., dissent.

PORTER, Justice (concurring specially).

I concur specially in the affirmance of the conviction, on the following grounds:

I. Because appellant failed to make timely objection in the trial court, and therefore the issue was not presented to the trial court, I would hold that the following issues are not before this court upon the merits:

(a) Refusal of the trial court to require disclosure of the identity of the confidential informant;

(b) presentation of testimony revealing that appellant had committed other criminal offenses unrelated to the offense for which he was on trial;

(c) refusal of the trial court to require removal of handcuffs from defendant's witness Husen before Husen took the stand as defendant's witness.

II. The jury were entitled to believe defendant's alleged oral confession, and we must view the evidence on appeal in the light most favorable to the State. The evidence so viewed establishes that defendant aided and abetted in the robbery and that the confederate used a handgun. In *State v. McCreary*, 82 S.D. 111, 142 N.W.2d 240 (1966), this court properly reversed for error in admission of a pistol, but placed some emphasis on the fact that the robbery of the telephone coin box did not involve use of a firearm, and the error in admission there was thus compounded. A handgun was used in this robbery, and defendant confessed his participation in the robbery. I do not find *McCreary* applicable and am unable to conclude in the face of the confession evidence that receipt or nonreceipt of the handgun in evidence would have made much difference in the outcome in this case. I do agree that the handgun in this case was not properly connected with the defendant, and thus should not have been admitted, but find it not to constitute prejudicial error. I note, also, that this defendant was convicted of second-degree robbery, which the trial court instructed the jury was a robbery committed without the use of force or the placing of the robbed persons in fear. In effect the defendant was convicted of a non-armed robbery.

III. The failure of defendant's trial counsel to move to suppress the oral confession and failure to move for disclosure of the name of the confidential informant may present an issue of denial of the defendant's constitutional right to the effective assistance of counsel. *Cf. State v. Mullins*, S.D., 260 N.W.2d 628. Whether such a contention can be supported upon a more complete post-conviction record is not before us. I cannot find this record on direct appeal sufficient to sustain defendant's claim in that regard.

MORGAN, Justice (dissenting).

I must respectfully dissent from the majority opinion.

Regarding the issue of whether the trial court erred in admitting into evidence the

gun supposedly used in the commission of the armed robbery, I agree that the correct law this court must follow is found in *State v. Pickering,* 217 N.W.2d 877, 881 (1974) where this court stated:

Instruments used in the commission of a crime are admissible as evidence only where there is proof connecting them with the defendant or the crime for which he is charged. * * * Although admissibility does not require proof positively showing the connection, there must be proof rendering the inference "reasonable" that the evidence was connected with the defendant or the crime charged. *State v. O'Connor,* 1969, 84 S.D. 415, 172 N.W.2d 724. Conversely, an instrument allegedly used in the commission of a crime should be rejected if the connection is too remote or conjectural.

However, I must disagree with the conclusion arrived at in the conference opinion that the jury could have reasonably inferred from the evidence that the gun marked as an exhibit was the gun stolen at Huron and used in the robbery. While testimony admitted into evidence proved the gun was stolen in Huron, it wholly failed to establish the gun was stolen from the defendant's stepfather. The only connection with the defendant being that the gun was stolen in Huron and that the defendant was apprehended in Huron, I feel this connection is too remote and conjectural. Furthermore, there was no evidence that the gun was used in the crime charged, thus the weapon should not have been admitted into evidence.

In a trial for armed robbery the fact that the weapon was improperly admitted would be prejudicial "per se" to the defendant and therefore require this court to reverse this case.

ZASTROW, Justice (dissenting).

I agree with Justice Morgan's dissent and would find the introduction of the handgun to be reversible error.

However, because the majority upholds the conviction, I feel that I must comment on the other issues raised by the defendant.

I agree with Justice Porter's concurring opinion that the issues of the confidential informant, unrelated criminal offenses and the handcuffed witness were not properly preserved by defendant's trial counsel. I would further agree with Justice Porter's position that the issue of ineffective assistance of counsel would best be litigated at a post-conviction hearing. Although the issue has been raised in this appeal, a factual hearing with testimony from the defendant's trial counsel is the only realistic method of determining the issue fairly for the defendant and his trial counsel. Since a motion for a new trial was not made on this issue, a post-conviction hearing appears to be the only effective manner of determining the facts.