STATE of South Dakota, Plaintiff
and Appellee,

v.

Steven LeRoy McBRIDE, Defendant
and Appellant.

No. 12779.

Supreme Court of South Dakota.

Argued Jan. 28, 1980.

Decided Sept. 17, 1980.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Stanley E. Whiting of Day, Grossenburg & Whiting, Winner, for defendant and appellant.

HENDERSON, Justice.

## ACTION

Steven LeRoy McBride (appellant) was convicted by a Tripp County jury of third-degree burglary on March 8, 1979. McBride appeals alleging he was denied effective assistance of trial counsel. We agree, reverse and remand for a new trial.

## FACTS

On January 22, 1979, appellant was arrested in Winner, South Dakota, and charged with third-degree burglary. Appellant was determined to be indigent and the trial court appointed counsel. A preliminary examination was held on January 31, 1979, and appellant was bound over to circuit court for trial. Appellant pled not guilty on February 14, 1979, the date of arraignment. Trial was set for March 7, 1979. On March 8, 1979, a jury returned a verdict finding appellant guilty of third-degree burglary. On March 28, 1979, after a presentence evaluation was made, appellant was sentenced to eight years in the state penitentiary. Appellant was appointed present counsel on March 30, 1979, to represent him on appeal.

There are some inconsistencies in the evidence received at trial. However, the following review of pre-arrest occurrences substantially reflects the pertinent facts.

Mr. and Mrs. Lawrence Brown, victims of the crime, returned home on January 19, 1979, at approximately 6:00 p. m. Their residence is located on the west edge of Winner. The Browns had been gone since January 17, 1979, and their home had been left unoccupied. Upon arrival, they discovered that their home had been broken into and the premises were in a state of disarray. Several items had been removed from the house. The Browns immediately called the sheriff's office and Deputy Sheriff Larry Wilcox responded. Upon arrival at the Brown's home that same evening, Deputy Sheriff Wilcox observed tracks in the snow indicating a vehicle had been stuck in the driveway. Two sets of footprints located outside the house were also observed by Deputy Sheriff Wilcox, although he could not determine if they were made by one or two individuals.

Deputy Sheriff Wilcox called the Winner Police Department dispatcher to find out if a stranded vehicle had been observed near the Brown's home. The dispatcher informed him that a stuck vehicle had been seen at that location and that it belonged to Rose Melda Milk, who reported it stolen the morning of January 19, 1979. Pursuant to this information, Deputy Sheriff Wilcox went to Milk's home. There it was discovered that a blanket belonging to the Browns was in the Milk car. Milk stated to Deputy Sheriff Wilcox she did not know where the blanket came from. After obtaining Milk's consent, a search was made of the car whereupon a pair of binoculars was found in the trunk. The Browns later identified the binoculars as their property.

The record reveals that during the night of January 18, 1979, Tim Roubideaux took Milk's car without permission. At approximately 7:00 a. m. on January 19, 1979, Roubideaux picked up Michael Williams, Larry Roast and appellant who were walking together in Winner. A quantity of wine was purchased and the four men proceeded to the "old processing plant" which is located near the Brown residence. Roubideaux was driving, and all four were drinking, when the car became stuck in the snow and failed to start. Williams testified that appellant and Roubideaux walked away from the car toward the Brown residence. Williams also stated that appellant and Roubideaux returned from the vicinity of the Brown residence carrying guns and a sack with unknown contents. The Browns did not mention any guns missing from their home, and no guns were ever recovered. Williams testified further that he did not leave the car while appellant and Roubideaux were outside, nor did he see either of them enter the Brown home. Appellant testified that he never entered the Brown home or had possession of the items taken from there.

After these events, appellant and his three companions walked back into town. During the afternoon of January 19, 1979, Roubideaux returned the keys to Milk's vehicle whereupon she retrieved it. Roubideaux, Williams, and appellant were all arrested. Williams was charged with receiving stolen property, but was granted immunity from prosecution on the condition that he testify for the state against appellant.

At trial, the state's witnesses consisted of Mrs. Brown, Williams, Milk, and Deputy Sheriff Wilcox. Appellant's witnesses were Gladys Roast (mother of Larry Roast), Larry Roast, who declined to testify under rights guaranteed him under the Fifth Amendment and SDCL 19–2–8, and appellant himself. Appellant's trial counsel, at conclusion of the state's case, made no motion for a directed verdict and submitted no requested jury instructions at the conclusion of the case.

## ISSUE

Was appellant denied his constitutional rights and due process of law because of ineffective assistance of counsel at trial?

## DECISION

■ The right of an accused in a criminal action to the assistance of counsel is guaranteed under Article VI, Section 7 of the South Dakota Constitution.[1] This means adequate and effective assistance of counsel. *State v. Pieschke*, 262 N.W.2d 40 (S.D. 1978); *State v. Goode*, 84 S.D. 369, 171 N.W.2d 733 (1969). The right follows the Sixth Amendment standards under the United States Constitution.[2] *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

■ In reviewing appellant's contention that he was denied a fair trial due to ineffective counsel, we begin with two premises: (1) an attorney is presumed competent, and (2) the party alleging incompetence has a heavy burden in establishing ineffective assistance of counsel. *State v. Pieschke*, supra; *State v. Roth*, 84 S.D. 44, 166 N.W.2d 564 (1969); *State v. Erickson*, 80 S.D. 639, 129 N.W.2d 712 (1964).

■ In considering the trial tactics of an attorney, we will not substitute our own theoretical judgment for that of the defense counsel who has dealt with appellant in an attorney–client relationship. *Crowe v. State*, 86 S.D. 264, 194 N.W.2d 234 (1972). This Court's function is not to second guess the tactical decisions of the trial attorney due to unproductive results in the courtroom. *State v. Walker*, 287 N.W.2d 705

---

1. South Dakota Constitution, Article VI, § 7 states: "In all criminal prosecutions the accused shall have the right to defend in person and by counsel . . . ."

2. The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defense."

(S.D.1980); *State v. Brown*, 285 N.W.2d 848 (S.D.1977). Effective counsel is not always equated with successful counsel. *State v. Watkins*, 85 S.D. 573, 187 N.W.2d 205 (1971). We have recently stated:

> Attorneys, as officers of the court, are presumed to do their duty as the law requires. Mere assertions or denials to the contrary by the accused do not entitle him to relief unless found to be true upon adequate proof, and the burden of establishing a basis for relief in a post–conviction proceeding rests on the petitioner.

*Brim v. State*, 290 N.W.2d 680, 681 (S.D. 1980).

 However, the duty imposed upon defense counsel to represent effectively carries with it the duty to exercise good faith judgment. *Crowe v. State*, supra. Every criminal defendant's constitutional rights must be protected, and "[t]here should be no hesitation in reversing a conviction if the record reveals that a defendant was not afforded the effective assistance of counsel." *Crowe v. State*, 84 S.D. at 280, 194 N.W.2d at 242. The quality of representation for an indigent defendant is not to be any less than that provided for a client who duly compensates his counsel. *State v. Means*, 268 N.W.2d 802 (S.D.1978); *State v. Jameson*, 75 S.D. 196, 61 N.W.2d 832 (1953). A criminal defendant is undoubtedly entitled to adequate and effective counsel, and "a mere perfunctory and casual representation does not satisfy the constitutional guaranty to the effective assistance of counsel." *State v. Pieschke*, 262 N.W.2d at 45. *See also Crowe v. State*, supra; *State v. Erickson*, supra.

Appellant has pointed out several factors which he maintains indicate the ineffectiveness of his trial counsel. Many of these allegations revolve around inaction by appellant's counsel in regard to the status of state's witness Michael Williams. Williams was the prosecutor's main witness and the only individual to give testimony which linked appellant with the burglary. Appellant argues that his counsel did not once try to use Williams' status (as a possible accomplice to the crime of which appellant was charged) to mitigate the effectiveness of his testimony.

Appellant alleges that his counsel should have made a motion for a directed verdict at the close of the state's case. This motion is predicated on the fact that if Williams was, in fact, deemed to be an accomplice, the state must show other corroborative evidence indicating appellant's guilt to establish a conviction. *See* SDCL 23A–22–8.

Williams was charged with receiving stolen goods and subsequently granted immunity for testifying against appellant. Appellant also states that it was error for his counsel not to request an instruction that the jury must consider with caution the testimony of an accomplice, or one granted immunity, i. e., Williams. Similarly, it is argued by appellant that his counsel should have requested that the jury be instructed to consider Williams' possession of stolen property in determining if Williams was an accomplice. It would appear the state did not have a case without the testimony of an accomplice or a colleague in crime. It behooved appellant's counsel to bear down on the most critical aspect of his defense by a motion for a directed verdict and a requested jury instruction pertaining thereto.

It is not absolutely necessary for us to determine that Williams was an accomplice to the offense charged against appellant. This is a factual question normally determined by the jury. *State v. Johnson*, 81 S.D. 600, 139 N.W.2d 232 (1965). The jury was instructed that the testimony of a witness determined to be an accomplice cannot be the sole basis of a conviction. This indicates there was sufficient evidence presented to potentially create a determination that Williams was indeed an accomplice. Since it was apparently not obvious at trial that Williams was not an accomplice, appellant's attorney should have moved for a directed verdict at the appropriate time. By not doing so, the prosecution was allowed to have its case submitted to the jury.

By not requesting that the jury be instructed to consider with caution the testimony of an accomplice, appellant's counsel

omitted a defense which might have negated Williams' damning testimony. Also, counsel's failure to request that the jury be instructed to consider Williams' possession of stolen property in deciding his accomplice status does not appear to have been a strategic move by his counsel. Both of these instructions, if they had been requested and given, might have mitigated the effect of Williams' testimony, hence, reducing the chances of appellant's conviction. No advantage could have been envisioned by appellant's counsel in withholding requests for these instructions.

Counsel for appellant did not request that the jury be instructed to consider the fact that Williams had been previously convicted of a felony in determining the credibility of his testimony.

> The fact that a witness has been convicted of a felony, if such be a fact, may be considered by you only for the purpose of determining the credibilty of that witness. The fact of such a conviction does not necessarily destroy or impair the witness' credibility. It is one of the circumstances you may take into consideration in weighing the testimony of such a witness.

South Dakota Pattern Jury Instructions, Vol. II, § 1–17–9. Since it was Williams' testimony which the state substantially based its case upon, counsel's failure to request this instruction allowed the jury to possibly place more credence in the testimony than was necessary. Again, we fail to see any advantage appellant's counsel might have sought to gain by not requesting this instruction.

■ Appellant contends that his counsel erred in not objecting to testimony elicited by the prosecution as to appellant's refusal to give a statement regarding the charged offense. It is also alleged that counsel for appellant wrongfully neglected to move for a mistrial on the basis of this testimony. The testimonial evidence was the result of questions by the prosecutor directed to the deputy sheriff who investigated the burglary. The refusal of a suspect to make a statement is not admissible evidence.

*Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). By his inaction, appellant's counsel allowed evidence to reach the jury which would tend to equate appellant's silence with guilt. Again, we cannot perceive any basis for appellant's counsel's refusal to act in accordance with this inadmissible testimony.

■ On redirect examination of Williams, trial counsel permitted the prosecutor to make statements and then ask the witness to verify them. Trial counsel failed to make objection and was weak and passive in this regard. Typical of this passive representation is exemplified in the redirect examination of Williams:

Q. So, if somebody entered the house you would not know, is that right?

A. Yes.

Q. How about the mobile home? Could you see the door to the mobile home?

A. No.

Q. So, if somebody entered the mobile home, you couldn't see them?

A. No.

Q. You never said they went in the house, did you?

A. No.

Q. You didn't say that today and never did before?

A. No, sir.

It appears the prosecutor was testifying and this continues for many pages in the transcript. It was highly improper as this was redirect examination and not cross–examination. Appellant's counsel failed to object to these leading and improper questions of the prosecutor, thus failing to protect the interests of appellant.

The above recitation of counsel's behavior at trial indicates appellant was the victim of ineffective and inadequate legal assistance. All men charged with crimes are entitled to complete equality at law and appellant was not afforded that equality. Counsel's inaction regarding potential objections, jury instructions, and motions support this conclusion. Although each separate inaction in and of itself may not consti-

tute inadequate representation, taken together, they created adversarial mediocrity which infected appellant's entire defense. Such legal quality cannot be said to be more than a superficial effort on the part of appellant's counsel. By being provided with no more than perfunctory and casual representation, appellant's right to adequate legal counsel and a fair trial has been violated.

On a procedural note, we have previously considered the issue of inadequate counsel only on appeals from post–conviction hearings. This procedure stems from our consistent rejection of the plain error doctrine and the necessity of having a record on the merits of the issue. *Arbach v. Gruba*, 89 S.D. 322, 232 N.W.2d 842 (1975); *State v. Kindvall*, 86 S.D. 91, 191 N.W.2d 289 (1971). Hence, our reversal is not based on the plain error rule and should not be considered as an inroad on our previous rejections of the rule. However, the defense at trial was so ineffective, and counsel's representation was so casual, that appellant's constitutional right to a fair trial was denied. Consequently, our reversal is based upon the manifest usurpation of appellant's constitutional rights as evidenced in the trial record. *State v. Luna*, 264 N.W.2d 485 (S.D.1978).

■ As to future appeals predicated on allegations of ineffective counsel, we strongly urge post–conviction relief as a means of determination. In this manner a sufficient record on the merits can be made enabling proper appellate review.

Appellant's conviction is reversed and the case is remanded for a new trial.

DUNN and MORGAN, JJ., concur.

FOSHEIM, J., concurs specially.

WOLLMAN, C. J., dissents.

FOSHEIM, Justice (concurring specially).

While I agree in substance with the majority opinion, my views differ on the nature of Williams' testimony. In this case, Williams should have been deemed an accomplice as a matter of law. As stated in

*Lasley v. State*, 287 P. 1055, 1056 (Okl.Cr. 1930): "The test by which to determine whether a witness is an accomplice is to ascertain whether he could be indicted for the offense for which the accused is being tried." *See also Wood v. State*, 341 P.2d 613 (Okl.Cr.1959). In *Lasley*, the witness was deemed not to be an accomplice where he did not participate in the larceny either by being present at the time of its commission or, if absent, by counseling and advising or encouraging the active participants; he had taken no part at all in the original taking or asportation. In the present case, Williams was in close association with appellant both before and after the alleged burglary and waited in the stalled automobile during the purported commission of the crime; by his own admission, he helped transport the fruits of the crime. He thus could have been indicted as a principal for the offense allegedly committed by appellant. *Cf. State v. Brown*, 285 N.W.2d 848 (S.D.1979); *State v. Moellar*, 281 N.W.2d 271 (S.D.1979). This conclusion is not altered by the fact that the evidence might have been insufficient to convict Williams as a principal or by the fact that he was only charged with receiving stolen property.

The rule that an accused cannot be convicted on the uncorroborated testimony of an accomplice is so well–settled that citation of authority is hardly required. One clear purpose of the rule is to minimize the possibility of convictions based upon the potentially unreliable testimony of persons induced to testify by promises of leniency. Williams was granted immunity, and his testimony was the only evidence linking appellant with the crime. Thus, the test set forth in *Lasley*, supra, is appropriate here, particularly where the witness, Williams, was apparently granted complete transactional immunity in return for his testimony against appellant.

WOLLMAN, Chief Justice (dissenting).

Although I am in agreement with the general principles of law regarding the constitutional right of an accused to the effective assistance of counsel, my reading of the

record in this case does not persuade me that the judgment of conviction must be reversed.

Although I agree that counsel should have moved for judgment of acquittal, how can we say that such a motion would have resulted in any benefit to defendant in view of the fact that the trial court submitted to the jury the question whether Williams was in fact an accomplice?

Likewise, although in view of our decision in *State v. Beene*, 257 N.W.2d 589 (S.D. 1977), counsel should have requested an instruction regarding the nature of an accomplice's testimony, I am not prepared to say that the result of the trial probably would have been any different had the instruction been given. Indeed, even today the members of this Court are not in unanimity on the necessity of giving such an instruction. See *State v. Spoonemore*, 287 N.W.2d 109 (S.D.1980).

With regard to the questioning of the officer about defendant's silence at the time of his arrest, defense counsel asked defendant to explain the reasons why he had declined to give any statement to the officer at the time of his arrest. Although one can debate whether it would have been better for defense counsel to object to the State's questions of the officer regarding defendant's silence, can we say that defendant would have been any less prejudiced by the question and the objection, which presumably would have been sustained, than he was by the full explanation of his reasons for remaining silent? Had defense counsel not responded in any way to the questions asked of the officer concerning defendant's silence, I would be inclined to agree with the majority opinion's holding on this point. As it was, however, defense counsel elected to respond to the State's improper attack by portraying defendant's exercise of his constitutional rights as that of a reasonable person under the circumstances.

I do not think it is a fair characterization of defense counsel's treatment of witness Williams to say that he was weak and passive. I quote the following excerpts from defense counsel's cross-examination of this witness:

Q. What are you charged with?

A. Receiving stolen property.

Q. And what happened to those charges?

A. Well, I got released on self-personal recognizance.

. . . . .

Q. Do you still have to go to court?

A. I don't think so.

Q. Why not?

. . . . .

A. If I testify we'll drop all the charges, you know, on me, against me.

. . . . .

Q. And so the charges on you have been dropped, is that right?

A. Yeah.

Q. And you're testifying here today knowing that you can't be prosecuted, isn't that right?

A. I think so.

Q. In other words, now you have been given what we call immunity, is that right?

A. Yes.

Q. Do you understand that?

A. Yes.

. . . . .

Q. Mike, have you ever been in the State Penitentiary before yourself?

A. Yeah.

Q. How many times?

A. Two times.

Q. What was that for?

A. Parole violation and forgery.

Q. Okay, you're on probation and you violated probation?

A. Yes.

Q. And what were you on probation for?

A. Forgery.

Q. You know what it's like to be in the penitentiary, don't you?

A. Yes, I think so.

I agree that defense counsel should have asked for an instruction regarding the effect of a prior felony conviction on a witness' credibility, but it blinks reality to assume that the jury would have placed any less credence in Williams' testimony in the light of such an instruction than they did in the light of the admissions he made on cross–examination. Again, defense counsel effectively assailed Williams' credibility in his final argument:

> The state called Michael Williams because Michael Williams said what the state wanted to hear.
>
> Michael Williams made that statement, the written statement, to the sheriff and deputy sheriff, after he was promised that he could get out, off easy, recognizance bond. Recognizance bond is one that you sign your name and you're out of jail on your own responsibility. He got leniency, too. He got immunity. Because he would testify to what the state wanted you to hear. We tried calling Larry Roast. Of course Larry took the fifth amendment. He didn't have immunity.

Defense counsel knew his jury, he knew the local community, and he knew the few cards that he held in his hand. That he may not have employed the same trial tactics that any one of us might have is not warrant for us to characterize his representation as mediocre, superficial, perfunctory, and casual. *State v. Pieschke*, 262 N.W.2d 40 (S.D.1978).

I would affirm the conviction.