STATE OF NORTH DAKOTA, Respondent, v. GEORGE HANSON, Appellant.

(207 N. W. 1000.)

**Homicide — dying declarations admissible; consciousness of impending death — may be shown by conduct and condition of declarant.**

1. To render a dying declaration admissible in evidence it must be shown

Note.—(1) Dying declarations; how sense of impending death evidenced, see annotation in 56 L.R.A. 406; 30 L.R.A. (N.S.) 391; 1 R. C. L. 545; 1 R. C. L. Supp. 193; 4 R. C. L. Supp. 40.

(2) Admissibility of evidence to prove threats made by accused on trial for homicide, see annotation in 3 L.R.A. (N.S.) 524; 13 R. C. L. 924; 3 R. C. L. Supp. 107; 4 R. C. L. Supp. 840.

that the decedent was possessed with a consciousness of impending death. Such consciousness, however, need not appear from the declaration itself; but may be inferred from all the circumstances. So a sense of impending death may be shown by the conduct and condition of the declarant, and the nature and extent of his wounds, at the time the declaration was made.

**Homicide — admitting evidence to show threats made against deceased by accused thirteen months before homicide not error; remoteness affects weight of such evidence but not competency or relevancy.**

2. In a prosecution for homicide the court did not err in admitting evidence tending to show that some thirteen months before the commission of the alleged offense the defendant made certain threats against the decedent. The remoteness of such threats in point of time is a matter for consideration in determining the weight of the evidence, but does not affect the competency or relevancy thereof.

**Homicide — error, if any, in instruction defining murder in second degree held not prejudicial to accused.**

3. For reasons stated in the opinion, it is held that certain assignments of error predicated upon the instructions to the jury are without merit.

**Criminal law — statement of trial judge that time for agreement of jury was indefinite, made in presence of jury not prejudicial error.**

4. For reasons stated in the opinion it is held that certain remarks made by the trial judge to the jury were nonprejudicial.

**Criminal law — jury asked for further instructions which were given orally after court asked if there was any objection on part of defense and no objection offered, held not error.**

5. Where, in a criminal action the main charge to the jury is in writing, and the jury after retirement and deliberation returns and asks for further instruction; and, the trial judge, in the presence of the defendant and his counsel asks if there is any objection to such additional instructions being given orally, and no objection whatever is offered, there is a waiver on the part of the defendant to the right to written instruction, and no error can be predicated upon the manner in which such additional instructions were given. State v. Mitchell, 49 N. D. 726, distinguished.

Opinion filed January 4, 1926. Rehearing denied March 17, 1926.

Criminal Law, 16 C. J. § 2467 p. 1032 n. 97; § 2653 p. 1091 n. 92; 17 C. J. § 3637 p. 295 n. 63; § 3662 p. 317 n. 10; § 3712 p. 353 n. 75. Homicide, 30 C. J. § 416 p. 189 n. 89; § 498 p. 225 n. 24; § 504 p. 263 n. 36; p. 264 n. 40, 41, 42; § 505 p. 266 n. 55, 56; p. 267 n. 58; § 712 p. 446 n. 34.

Appeal from the District Court of Bowman County, *Hanley, J.*

George Hanson was convicted of manslaughter in the second degree and appeals.

Affirmed.

*Simpson & Mackoff* and *F. M. Jackson*, for appellant.

"It is not enough that the statement be made when the declarant is in extremis, it is also essential that it be made when he has abandoned all hope of recovery from the injury inflicted by the accused and is under the firm conviction that his death is inevitable, and near at hand." 30 C. J. 263, § 504.

"As a foundation for the admission of a statement, if a dying declaration, it must be shown that it was made by deceased under a sense of impending death and without hope of recovery. Furthermore, it is the declarant himself who must entertain the belief and not anyone else." 30 C. J. 257, § 498.

"But as to whether the alleged dying declarations were made under such circumstances as to render them admissible in evidence, is to be determined by the court upon the preliminary proof or predicate for their introduction." 30 C. J. 268, § 507.

"This statute is clearly mandatory in its requirements that the instructions first be reduced to writing. The defendant on trial has a right to assume that the statute will be complied with, and his silence cannot be construed as consent." State v. Mitchell, 49 N. D. 726, 193 N. W. 310.

*P. B. Garberg, S. L. Nuchols, G. F. Shafer*, Attorney General, and *M. E. Remmen*, State's Attorney (*E. T. Burke* of counsel), for respondent.

"The court must draw a rational conclusion from all that was said, taken in connection with such circumstances as must have been known to the declarant." State v. Kuhn, 117 Iowa, 216, 90 N. W. 733.

"The conclusion of the trial court that dying declarations were admissible in evidence will not be disturbed on appeal unless it was manifest that the facts did not warrant the conclusions." Gipe v. State (Ind.) 1 L.R.A.(N.S.) 419.

"The remoteness or nearness of time as to threats and declarations, pertaining to the act subsequently committed, makes no difference as to the competency of the testimony." Keener v. State, 18 Ga. 194; State v. Ford, 3 Strobh. L. 517.

"The evidence of threats made by a defendant on trial for murder against deceased four months previous to the killing is admissible." Pate v. State (Ala.) Jan. 8, 1892.

"Threats against deceased made by defendant in a murder trial a month before the homicide are admissible upon the trial." State v. Campbell (S. C.) Jan. 7, 1892.

Threats made three years before are admissible to show malice on the part of one who has committed an assault. Peterson v. Toner, 80 Mich. 350. See also Territory v. Roberts, 9 Mont. 12; Babcock v. People, 13 Colo. 515

CHRISTIANSON, Ch. J. The information in this case charged the defendant, Hanson, with the crime of murder in the first degree. · The defendant entered a plea of not guilty. The jury returned a verdict finding the defendant guilty of manslaughter in the second degree, and fixed the punishment at three years' imprisonment in the state's penitentiary. Sentence was imposed in conformity with the verdict, and the defendant has appealed from the judgment of conviction.

The first assignments of error urged by the defendant are predicated upon certain rulings made by the trial court in admitting in evidence certain alleged dying declarations of the person whom the defendant is charged with having killed.

A careful consideration of the record leads us to the conclusion that the trial court did not err in admitting this evidence. The undisputed evidence shows that Forbes, the deceased, died as a result of a certain gun shot wound inflicted upon him by the defendant. The shooting took place on defendant's farm in Adams County, and several miles from the nearest town. The defendant is a bachelor and was living alone. The deceased came to the place traveling in an automobile. The defendant and the deceased were the only persons present at the time the shot was fired. The defendant was in the house and the deceased on the outside. The shot was fired through a door and the bullet entered the abdomen of the deceased. After the shot had been fired the deceased got into his automobile and drove to the house of a neighbor, a short distance away, where he got out of the automobile and went into the house, but as soon as he entered he fell in a faint upon the floor. Three physicians were immediately summoned, one

of them being called from Hettinger, some eight miles, and another from Lemon, some fifteen miles distant. The physicians examined the deceased, found him to be severely injured and determined that the only chance to save his life was by an operation; but they were all agreed that even an operation afforded very slight chance and that the probabilities were that he would die. After consultation the physicians agreed that the family physician should go in and see the injured man and "apprise him of the impending doom, impending death." Thereupon the family physician went to the bedside of the injured man and told him "that he was in very serious condition and that there was grave danger of his dying and that if he had anything to say or any will to make or anything to arrange he (the physician) advised him to do it as soon as possible." This statement was made to the injured man about an hour before he died. After this statement had been made and about ten minutes before death certain questions were propounded to the injured man by one of the doctors. These questions, together with the answers thereto, were reduced to writing by one of the persons present. These questions and answers relate to the identity of the person who fired the shot and the circumstances directly connected with the shooting. The principal, if not the sole, contention of the appellant is that these statements were inadmissible as dying declarations because it was not shown that at the time they were made the decedent had a consciousness of impending death. That such consciousness is essential to render a dying declaration admissible is too well settled for dispute. Underhill, Crim. Ev. 3d ed. §§ 171 et seq. But it is equally well settled that it is not essential that the deceased should have made a statement to the effect that he believed that he was about to die. The question is not whether the declarant stated that he believed he was about to die; but whether he, in fact, had a sense of impending death, that is, whether he had a fixed belief that death was impending, and certain to follow immediately, or in a very short time? The question relates to the state of mind of the deceased. And such state of mind may be proven as well by circumstances as by the express declarations of the deceased. Underhill, Crim. Ev. 3d ed. § 172.

So, a sense of impending death "may be shown not only by what the injured person said, but by his conduct and condition, and by the

nature and extent of his wounds; and it is sufficient if these show that the declarations were made without expectation of recovery, and under sense of impending death, notwithstanding the declarant may not have said that he was without hope, or that he was going to die." State v. Roberts, 28 Nev. 350, 82 Pac. 100, 101; note in 30 L.R.A. (N.S.) pp. 393, et seq. When all the circumstances in which the declarations in question here are considered, we are of the opinion that the trial court was justified in finding that they were made under a sense of impending death.

It is next contended that the court erred in admitting evidence of threats made by the defendant against the decedent some thirteen months prior to the time of the alleged offense. It is said that these alleged threats were inadmissible because of their remoteness in point of time. This contention is not well founded. The remoteness did not affect the admissibility, but had a bearing on the weight, of the evidence. Underhill, Crim. Ev. 3d ed. § 509.

It is next contended that the trial court erred in receiving in evidence certain particles of lead which the State claimed had been removed from the body of the decedent at the autopsy. The specific contention on the part of the defendant is that it was not shown that they were the same particles which had been so removed. In our opinion the contention is without merit. We believe that the evidence of identification was sufficient to justify the admission of this evidence; but in any event it is inconceivable that any prejudice could have resulted, as the undisputed evidence—including the testimony of the defendant himself—shows that the defendant in this case actually discharged a shot which resulted in the death of the decedent and that at the time of the autopsy the doctors removed from the body of the deceased certain fragments of a bullet,—fragments similar to those introduced in evidence in this case.

It is next contended that the court erred in giving an incorrect definition of the crime of murder in the second degree in the instructions to the jury. In our opinion the contention is not well founded; but even though the definition of murder in the second degree was inaccurate, it is difficult to understand how defendant was prejudiced thereby, as the jury by the verdict in the case found defendant to be not guilty of such offense. The jury further found that he was guilty

of manslaughter in the second degree; and there is no contention that the court did not correctly define that offense.

It is next contended that the court erred in certain remarks made to the jury after the case had been submitted to them for determination. The record shows that at five o'clock in the afternoon of the day that the case was submitted to them for determination, the jury was brought in, and in the presence of the defendant and his counsel a certain colloquy took place. The court made some inquiry as to whether there was any prospect of immediate agreement, to which the foreman answered in the negative; whereupon the trial judge stated that he had arranged to have the jury sent to supper within the next half hour and would ask the jury to be back from supper "probably along about six o'clock." The foreman then asked: "How long is our time specified?" To which the trial court replied: "Unlimited time. You have got all eternity, until some of you die, for you to arrive at a verdict. The court will expect you to work on the case until an agreement is reached." The foreman then said: "If we don't come to a verdict how long a time?" To which the trial court replied: "Well, there is no specified time fixed, but it would probably be a matter of days. Ordinarily when a jury has a case, the case is left with the jury until they come to an agreement, no time fixed. That is what we are here for, to come to an agreement, come to a decision in the case, and certainly it is the intention of the court to leave this case with you until you come to an agreement." The defendant's counsel then said: "I did not misunderstand the court to say: leave the case with the jury until they come to an agreement. In case they couldn't come to an agreement?" To which the court replied "That is a matter that we will have to meet when the situation arises."

It is the contention of the plaintiff that this, in effect, constituted a threat on the part of the court that in no event would the jury be discharged unless and until an agreement was reached. We do not believe that the language of the trial court taken as a whole is reasonably subject to such construction. The last remark of the court,—made in answer to the statement of defendant's counsel,—was to the effect that he would consider what to do if the jury reported a disagreement and not until then. The remarks of the trial court were occasioned by the inquiry of the foreman of the jury, indicating that he assumed there

was a definite and limited time allowed to the jury for deliberation. The obvious purpose of the remarks of the trial court was to correct this impression, and to inform the jury that they had all the time they might possibly require for careful and conscientious consideration of the case; that they were to decide the questions of fact which had been submitted to them, and that they would be allowed all the time required for that purpose. The trial court very properly indicated that he would determine the action to be taken in case a disagreement was reported only when that situation arose, and not before. We do not believe it possible that intelligent and honest men could have been influenced by the remarks of the trial court to bring in a verdict contrary to their sense of duty.

It is next contended that the court erred in giving certain oral instructions to the jury, in addition to the main charge, which was in writing. The record shows that at 8:45 P. M., of the day on which the case was submitted to the jury, the jury was brought in and given certain additional instructions. Upon the jury being brought in, there followed a colloquy between the foreman and the trial judge, wherein the foreman informed the judge that the jurors were having some difficulty with that portion of the charge which related to self-defense. After referring to the jurors' request for additional instructions the trial judge said: "I don't suppose there is any objection to it not being in writing? The court can put it in writing." The record shows affirmatively that both defendant and his counsel were present at the time; and they made no objection to the court's suggestion that the additional instructions be given orally. The trial court thereupon proceeded to give certain additional oral instructions to the jury. All that was said by the trial court was taken down by the court reporter and transcribed as part of the record. It does not appear from the record whether the additional instructions so given orally were later written out and given to the jury upon their retirement. No exceptions were taken at the time the instructions were given to the manner in which they were given. Such exception is presented for the first time in the specifications of error on this appeal; and even on this appeal no exception is taken to the matter of the additional instructions. In other words, it is not contended that the additional oral instructions did not correctly state the law. The sole complaint is that they

were given orally. In the circumstances, we think there was a waiver by the defendant of the right to written instructions, and that error cannot be predicated thereon. Boss v. Northern P. R. Co. 2 N. D. 128, 33 Am. St. Rep. 756, 49 N. W. 655. See also State v. Glass, 29 N. D. 620, 151 N. W. 229. The rule announced by this court in State v. Mitchell, 49 N. D. 726, 193 N. W. 310, is not applicable to the facts here.

What has been said above disposes of all assignments of error fairly arising upon the record. Certain minor assignments not specifically discussed are controlled by the disposition made of those decided.

It follows from what has been said that the judgment appealed from must be affirmed. It is so ordered.

NUESSLE, BIRDZELL, BURKE, and JOHNSON, JJ., concur.