STATE, Respondent v. PICKERING, Appellant

(217 N.W.2d 877)

(File No. 11241. Opinion filed May 17, 1974)

Sidney B. Strange, Sioux Falls, for defendant and appellant.

William A. Delaney III, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Kermit A. Sande, Atty. Gen., Pierre, Gene Paul Kean, State's Atty., Sioux Falls, on brief.

WINANS, Justice.

In an information filed in the Circuit Court of Minnehaha County, the defendant, Patrick Pickering, and James Nelson were conjointly charged with the murder of Wayne Sherwood. The defendant was tried separately from Nelson before a jury in Davison County. The jury found the defendant guilty and he was sentenced to life imprisonment. From the judgment of conviction the defendant appeals.

In summary, the following facts are relevant to an understanding of this appeal: On October 4, 1971, the defendant, James Nelson, and Wayne Sherwood were inmates at the South Dakota State Penitentiary. On that date, at approximately 8:20 in

the evening, Wayne Sherwood became violently ill. Several persons who were with him at that time testified that he was "talking and joking" with them when he suddenly complained of having trouble seeing and breathing. They further testified that moments later he became rigid, was unable to stand, went into convulsions, turned blue in the face, and appeared to be in a great deal of pain. He was immediately removed from the prison and taken to a local hospital where he was pronounced dead shortly after his arrival. On the following day, an autopsy was performed on Sherwood's body which failed to reveal the cause of his death. However, gastric and urine samples which were removed from the body during the autopsy were subsequently examined and found to contain strychnine. Based upon the symptoms of his illness and the finding of strychnine in the gastric and urine samples, the physician who conducted the autopsy expressed the opinion that Sherwood died of strychnine poisoning.

The evidence connecting the defendant with Sherwood's death was sufficient beyond a reasonable doubt and the jury verdict was justified. There was evidence that at approximately 8:10 on the evening of his death, Sherwood was watching TV with several other inmates when he was approached by Pickering and Nelson. After the two asked to talk with him, Sherwood accompanied them to a barbershop-toilet area. While the three were alone in the barbershop-toilet, an inmate who was waiting outside observed Pickering hand several "blue capsules" to Sherwood. The inmate testified that although Sherwood appeared somewhat reluctant at first to take the pills, Pickering and Nelson eventually persuaded him to swallow them. After taking the pills, Sherwood returned to the area where he had been watching TV and a few minutes later he was overcome with his fatal seizure. There was also evidence presented that Peggy Pickering, wife of the defendant, purchased a quantity of strychnine on October 2, 1971, and that she visited the defendant on October 4, the date of Sherwood's death.

After Sherwood's death, Pickering made certain admissions to another inmate, William Baker. Baker testified that he heard Pickering state that Sherwood was dead and that he (Pickering) had "got" him. Baker also testified that in conversations he had with Pickering shortly after Sherwood's death, Pickering admitted

to him that he had given Sherwood six capsules containing strychnine while they were in the barbershop-toilet area and that he had persuaded Sherwood to take them by telling him they were merely pills to get "high on."

In view of the above described evidence, the defendant understandably does not question the sufficiency of the evidence to sustain the conviction. Instead, the defendant argues in this appeal that the trial court committed reversible error in: (1) admitting into evidence the defendant's prior judgment of conviction for manslaughter; (2) admitting into evidence an envelope containing strychnine which was found in the prison approximately nine months after Sherwood's death; (3) permitting two inmates to testify as to alleged dying declarations made by Sherwood; (4) permitting the Assistant State Chemist to testify as to the results of an analysis of certain stomach contents removed from Sherwood's body; and (5) refusing to sequester the jury. These contentions will be considered in the order presented.

(1) At the time of Sherwood's death, Pickering was serving a 42-year sentence for manslaughter. Early in the trial, the judgment of the defendant's prior conviction for manslaughter was admitted into evidence over his objection. The judgment was a part of the State's case in chief and it was not admitted for impeachment purposes. The defendant argues that it was error to allow the jury to consider evidence of his prior criminal record.

The general rule is well established that proof that the defendant has committed other crimes or offenses is incompetent and inadmissible for the purpose of showing the commission of the crime charged. State v. Hanks, 1929, 55 S.D. 63, 224 N.W. 946; State v. McCreary, 1966, 82 S.D. 111, 142 N.W.2d 240. However, there are a number of well recognized exceptions to the general rule. In McCreary, we recognized that evidence of other criminal acts is usually competent and admissible to prove the accused's identity, knowledge, intent or malice, motive, acts of a plan or system of criminal action, and acts constituting continuous offenses. When the evidence is relevant to one of these issues, it is generally conceded that its probative value is greater than its prejudicial effect.

■ After reviewing the record, it is our conclusion that the trial court did not err in admitting into evidence proof of the defendant's previous conviction. The state's case was based on the theory that Pickering had premeditatedly killed Sherwood because Sherwood had testified against him in his previous trial and that Sherwood refused to change his testimony to enable him to get a new trial. In support of this theory, the state produced evidence which indicated that Sherwood had been a witness in the defendant's prior trial; that Sherwood had subsequently agreed to change his testimony and testify in an affidavit that he had observed Pickering's brother kill the girl that Pickering had been convicted of killing; and that just before his death, Sherwood again changed his mind and refused to submit the testimony by affidavit on the defendant's behalf.

In view of this evidence, there is no question that the evidence of the defendant's prior conviction was relevant to the question of his motive for killing Sherwood and thus it was admissible as evidence. Moreover, the jury was properly instructed upon the limited purpose of this evidence.

(2) The strychnine in question was found in a cellophane bag on June 29, 1972, approximately eight months after Sherwood's death. A prison supervisor testified that he inadvertently found the substance under a sanding machine in the carpenter shop of the prison. Over the defendant's objection, an envelope containing the strychnine was admitted into evidence at the trial. The defendant argues in this appeal that the strychnine should not have been admitted for the reason that the state failed to establish a sufficient connection between the defendant and the exhibit.

■ Instruments used in the commission of a crime are admissible as evidence only where there is proof connecting them with the defendant or the crime for which he is charged. See 22A C.J.S. Criminal Law § 709, pp. 946-949. Although admissibility does not require proof positively showing the connection, there must be proof rendering the inference "reasonable" that the evidence was connected with the defendant or the crime charged. State v. O'Connor, 1969, 84 S.D. 415, 172 N.W.2d 724. Conversely, an instrument allegedly used in the commission of a

crime should be rejected if the connection is too remote or conjectural.

■ In the present case, the evidence connecting the defendant and his alleged accomplice, Nelson, with the strychnine was entirely circumstantial. As indicated above, there was evidence that Sherwood died of strychnine poisoning; that Pickering's wife purchased a "brown bottle" containing strychnine just prior to Sherwood's death; and that she visited the defendant on the date of Sherwood's death. In addition, an inmate testified that on the morning after Sherwood's death, he observed Pickering hand a brown bottle to Nelson and he heard Pickering order Nelson to "stash it". The inmate further testified that the brown bottle was identical in appearance to the one purchased by the defendant's wife containing strychnine. There was also evidence that Nelson worked in the carpenter shop where the strychnine was found before and after Sherwood's death and that the area was relatively inaccessible to all but the few who worked there.

■ In view of these closely connected circumstances, it is our conclusion that the jury could reasonably infer that the strychnine was connected with the crime for which Pickering was charged and thus it was properly admitted into evidence. See State v. O'Connor, supra. We find no merit to the defendant's argument that the strychnine was inadmissible as evidence merely because it was discovered several months after the crime was committed in an area to which others had access. The following language from C.J.S. substantiates this conclusion:

> "To warrant the admission in evidence of an instrument or weapon as the one with which the crime was committed, a prima facie showing of identity and connection with the crime is necessary and sufficient; clear, certain, and positive proof, or positive identification, is generally not required. Objections to the lack of positive identification, or to the sufficiency of the evidence * * * connecting it with accused or with the crime, such as the objection that a considerable length of time elapsed after the crime before the weapon or instrument was found, or that in the interval third persons may have had access thereto, or that it was tampered with,

go to the weight, or probative force, of the evidence rather than to the admissibility of the article." 22A C.J.S. Criminal Law § 712, pp. 961-963.

Accordingly, the defendant's objections to the evidence affected only the weight that it should be given, not its admissibility. See also State v. Olek, 1970, 288 Minn. 235, 179 N.W.2d 320.

(3) The defendant's next contention is concerned with certain rulings made by the trial court in admitting in evidence certain alleged dying declarations made by Sherwood. After reviewing the record and the applicable law, it is our conclusion that the trial court did not err in admitting this evidence.

The evidence in question was offered by two inmates who were with Sherwood just before his death. One of the inmates testified that immediately before he lost consciousness, Sherwood admitted that he had just taken some blue pills that were given to him by Pickering and Nelson. The inmate further testified that Sherwood stated, "Do you think that Pat and him would do that to me would give me some bum pills". The second inmate testified that he had heard a part of this conversation. Both inmates testified that at the time Sherwood made these statements, he was having trouble seeing and breathing and that he appeared to be in great pain. It was also established that Sherwood died minutes later.

The defendant argues that Sherwood's statements should not have been admissible as dying declarations since there was insufficient proof that he was conscious of impending death at the time. It is true that to be admissible as a dying declaration, it must appear that the declaration was made at a time when the declarant was under the fixed and solemn belief that his impending death was near at hand and that he had no chance of recovery. 40 Am.Jur.2d, Homicide, § 366, p. 629. This apprehension of death must be more than a mere suspicion. However, it is not necessary to show a statement by the victim that he was conscious of impending death; the expectation may be inferred from the circumstances of his condition. Penn v. State, 1929, 119 Neb. 95, 227 N.W. 314; State v. Hanson, 1926, 53 N.D. 879, 207 N.W. 1000. Whether or not it can be inferred that the declarant

was conscious of impending death is a preliminary question to be determined by the trial court in the exercise of its discretion. The trial court's decision in such a matter will be reversed only where there has been a clear abuse of discretion. 5A C.J.S. Appeal and Error § 1644, pp. 238-241. There was no such abuse of discretion in the present case. When all of the circumstances are considered, we are of the opinion that the trial court was justified in concluding that Sherwood made the statements in question under a sense of impending death.

(4) The defendant's next contention is concerned with certain testimony given at the trial by the assistant state chemist, Donald Frasch. Frasch described various tests that he performed on stomach samples that had been removed from Sherwood's body during the autopsy. Based upon these tests, he expressed the opinion that the stomach samples contained strychnine. The defendant's objection to this testimony is centered on the fact that before the autopsy was conducted and the stomach samples examined, the body had been embalmed and there was no proof offered of the ingredients of the embalming fluid used. The defendant argues that evidence of the analysis of the stomach contents was incompetent since the stomach contents had been altered before they were examined.

We find no merit in this argument. The trial court necessarily has a broad latitude of discretion with respect to the admission of evidence of this type. The state was required to make a prima facie showing that the results of the test were attributable to ante-mortem rather than post-mortem causes. They were not required however, to negative every possibility that the finding of strychnine was attributable to the embalming fluid. There was nothing in the record in this case to create even a suspicion that the embalming fluid used would account for the finding of strychnine. Moreover, there was expert testimony at the trial that strychnine could be detected despite the presence of the embalming fluid. In view of the record, it is our conclusion that there was sufficient evidence to support the finding that the presence of strychnine was attributable to ante-mortem causes and thus the trial court did not abuse its discretion in admitting the results of the test as evidence. The fact that the body had been embalmed before the substances were removed from the

body affected the weight, not the admissibility of the evidence. 29 Am.Jur.2d, Evidence, § 824, pp. 912-914.

(5) We likewise reject the defendant's final contention—that it was error to refuse his motion to sequester the jury after the start of the trial. This contention is based upon publicity that was given the trial by means of radio, television, and the press. The defendant attaches particular significance to the publicity given to his attempt to change his plea to guilty midway through the trial. The defendant argues that due to the refusal of the trial court to sequester the jury, this publicity denied him his right to an impartial jury.

 Pursuant to SDCL 23-43-44, it is discretionary with the trial court as to whether or not a jury should be sequestered. The trial court did not abuse that discretion in the present case despite the publicity given the trial. The publicity was not inherently prejudicial or irresponsible and nowhere in the record is there any indication that the defendant was in fact prejudiced by it. Moreover, the trial court conscientiously admonished the jury on numerous occasions that they were not to listen to newscasts and that their verdict was to be based only on the evidence presented at the trial. As such, we will not disturb the trial court's ruling on the matter in this appeal.

We have reviewed the defendant's remaining assignments of error and we find that they are without merit.

Affirmed.

All the Justices concur.