2001 ND 146

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kathlene SHAFER–IMHOFF, a/k/a Karin Kathlene Shafer–Imhoff, Defendant and Appellant.**

**No. 20000350.**

Supreme Court of North Dakota.

Aug. 29, 2001.

Rick L. Volk (argued), Assistant State's Attorney, and Leann K. Bertsch (appeared), Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Rodney E. Pagel (argued), and Jeffrey S. Weikum (appeared), Pagel Weikum Law Firm, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]   Kathlene Shafer–Imhoff appealed the district court judgment and conviction of two counts of removal of a child from the state in violation of N.D.C.C. § 14–14–22.1. We affirm the verdicts but remand to the trial court for re-sentencing in accordance with this opinion.

I

[¶ 2]   Kathlene Shafer–Imhoff ("Shafer") and Lars Imhoff ("Imhoff") were divorced in March of 1998, after nine years of marriage.  Imhoff was granted custody of their two children and Shafer was granted visitation.  The parties agreed Shafer would have the children for extended visitation during the summer of 1998, from June 1 to 15 and again from July 1 to 15.  At the end of the second summer extended visitation on July 15, 1998, Shafer did not return the children to their father.  Shafer had taken her two children out of the country.  Eight months later, the children and Shafer were located in London, England.  Shafer was charged with two counts of removal of a child from the state in violation of N.D.C.C. § 14–14–22.1., a class C felony.

[¶ 3]   Prior to the trial, the State moved to exclude evidence of physical assaults on Shafer.  Shafer opposed the motion, claiming it was relevant to the element of intent.  The trial court excluded the evidence, allowing Shafer to testify about her fear but not about the assaults.  The trial court stated the evidence of assaults on Shafer by third parties was not relevant to the crimes charged and was unfairly prejudicial.

[¶ 4]   The trial lasted one day with the case submitted to the jury for deliberation at about 3:00 p.m. Within two hours, the jury indicated they were unable to come to a unanimous decision.  The trial court read to the jury instructions concerning their duty to reach a verdict, as suggested in *State v. Champagne,* 198 N.W.2d 218 (N.D.1972).  The jurors were also given a copy of these instructions and were dismissed from the courtroom to continue deliberation.

[¶ 5]   Later, the jury submitted to the trial court specific questions on the element of intent.  The trial court, after conferring with the parties, reconvened the parties and the jury in the courtroom. The trial court provided the jury with answers, a special verdict form and instructions in response to the jury's questions, as agreed by the parties.  At 9:00 p.m. the trial court sent the jury home for the evening, after informing them that each of the parties would present additional closing arguments in the morning solely focused on the element of intent.

[¶ 6]   The next morning, the parties presented additional closing arguments to the jury and the jury resumed deliberation.  At 11:00 a.m., the jury returned the verdict of guilty on both counts of removal

of a child from the state in violation of N.D.C.C. § 14–14–22.1.

[¶ 7] The trial court sentenced Shafer to five years for each count, suspending all but eighteen months on each count followed by five years of parole. The court ordered Shafer pay $22,765.20 restitution and a court fine of $2,500. The court stayed the sentence pending resolution of the appeal.

## II

[¶ 8] Shafer argues the trial court abused its discretion by excluding evidence of physical assaults on her. Shafer's offer of proof for this evidence included photographs of her injuries, testimony from two witnesses who reported hearing fighting in Shafer's apartment, and testimony of Shafer's sister and boyfriend who observed bruising and other injuries to Shafer. Shafer claims she was a victim of assaults by unknown assailants who would make statements during the attacks concerning child-custody issues. The assaults were never in the presence of her two children until July 1998. In July 1998, Shafer alleges she was assaulted in the presence of her two children. Fearing for their safety, Shafer removed them from the state. No one was charged with any of the assaults. The July 1998 assault Shafer claimed was in the presence of the children was not reported to the police.

[¶ 9] Shafer claims the evidence of the assault is relevant to prove her intent was not to deny Imhoff's rights under the existing custody decree but rather to protect the safety of her children.

[¶ 10] Section 14–14–22.1, N.D.C.C., provides criminal penalty for removal of a child from the state in violation of a custody decree.

Any person who intentionally removes, causes the removal of, or detains the person's own child under the age of eighteen years outside North Dakota with the intent to deny another person's rights under an existing custody decree is guilty of a class C felony. Detaining the child outside North Dakota in violation of the custody decree for more than seventy-two hours is prima facie evidence that the person charged intended to violate the custody decree at the time of removal.

[¶ 11] The trial court allowed Shafer to testify about her fears, her concerns, and her intents, but excluded the evidence of the assaults. The trial court stated the crimes Shafer was charged with are very specific. The charges are she removed the two children from the state with intent to deny someone's rights under an existing custody decree. Whether or not she was assaulted, the trial court clarified, was not relevant to the resolution by the jury of these two crimes. Also, the trial court believed the evidence of assaults would unfairly prejudice the State on the charges of removal of the children.

[¶ 12] Relevant evidence means evidence that reasonably and actually tends to prove or disprove any fact that is of consequence to the determination of an action. *Botnen v. Lukens*, 1998 ND 224, ¶ 11, 587 N.W.2d 141. N.D.R.Ev. 401. A trial court has wide discretion in deciding whether proffered evidence is relevant, and we will not overturn a trial court's admission or exclusion of evidence on relevance grounds unless the trial court abused its discretion. *State v. Osier*, 1999 ND 28, ¶ 5, 590 N.W.2d 205. Even relevant evidence may be excluded under N.D.R.Ev. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. N.D.R.Ev. 403. A trial court is vested with broad discretion to decide not only if evidence is relevant

but also if its probative value substantially outweighs the danger of unfair prejudice. *State v. Steinbach,* 1998 ND 18, ¶ 9, 575 N.W.2d 193. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law. *Barta v. Hinds,* 1998 ND 104, ¶ 5, 578 N.W.2d 553.

[¶ 13] The trial court reasonably excluded the evidence because the evidence did not indicate the assaults on Shafer were in any way directed at the children, and therefore were not relevant to any element of the charge. Therefore, evidence of assaults had the potential to unfairly prejudice and mislead the jury. The trial court did not act in an arbitrary, unreasonable, or unconscionable manner when it excluded the evidence of the assaults.

### III

[¶ 14] Shafer contends the trial court abused its discretion when it required the parties to make additional closing argument to the jury prior to any further indication by the jury they were at an impasse. Shafer also claims the trial court erred by not giving the jury instruction Shafer requested, which was the jury instruction suggested in the explanatory note of N.D.R.Ct. 6.9. Furthermore, Shafer maintains the trial court comments to the jury were an abuse of discretion.

[¶ 15] The jury left the courtroom to begin their deliberation at 3:12 p.m. Open court resumed at 5:20 p.m. The trial court stated it received a message from the jury, "[t]he jurors have asked that I inform the Court that we can't come to a unanimous decision." The message was signed by the presiding juror. The trial court responded by telling the jury the matter has to be

decided and it was their responsibility as jurors to weigh the evidence and come to a verdict, stating they had all the evidence they needed to come to a decision. Next, the trial court read a special instruction for the jury in accordance with the instructions in *State v. Champagne,* 198 N.W.2d 218 (N.D.1972):

1.  In order to return a verdict, each juror must agree to the verdict.

2.  You jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment.

3.  All jurors must decide the case for themselves, but only after an impartial consideration of the evidence with their fellow jurors.

4.  In the course of deliberations, you jurors should not hesitate to re-examine your own views and change your opinion if you are convinced it is erroneous.

5.  You jurors should not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of reaching a verdict.

[¶ 16] The jury was then given a written copy of the instructions and excused from the courtroom. At 7:44 p.m. the parties met with the trial judge in chambers. The jury sent another question, "[w]hy is the word 'with the intent' used?" The trial court proposed the answer, "[a]s to your first question, the language used by the Legislature is 'with the intent.' This is one of many crimes that cannot be done by accident. To be guilty one has to have intent of doing what one is accused of doing." The jury had a second question, "[c]an that be removed" to which the trial court answered, no it cannot be removed. The third question was, "[w]hy on the Ver-

dict sheet does it not mention with the intent?" The answer given to this question was the verdict form simply uses a shorthand reference to the crime charged. The jury also asked, "[i]s all we need to decide what is on the Verdict sheet?" In response to this question, the trial court suggested and the parties agreed to an amended verdict form that included the language of the definition of the crime charged in the verdict form.

[¶ 17] At 9:00 p.m. open court resumed, with the parties and jury present. The trial court explained the responses given to their previous questions were the result of discussion and agreement with the parties. The trial court continued addressing the jurors, reinforcing it was the job of the jury to decide cases and observing the trial was originally scheduled for eight days and those eight days were still on the schedule. Releasing them for the evening, the trial court also informed the jury of its plans to have each of the attorneys make additional closing arguments in the morning, according to the direction given by N.D.R.Ct. 6.9 on assisting jurors at impasse. The trial court directed the attorneys to plan about ten minutes of additional closing arguments focused on the element of intent to deny. Before dismissing the jury for the night the trial court added, "I'm looking forward to getting this case resolved. Like I said, I've got all eight days. It won't be a problem for me. Thank you all very much."

[¶ 18] The next morning, Shafer objected to the use of N.D.R.Ct. 6.9 because there was no indication a second impasse had occurred. Also, Shafer was concerned about interjecting new arguments after deliberation had started. Shafer requested the instruction listed in the comments of N.D.R.Ct. 6.9 be given to the jury and an additional instruction reminding the jury arguments are not evidence. Shafer raised

a concern the additional closing arguments would improperly focus the attention on the minority of the jurors if there were jurors in the minority, and objected to the comments the jurors would stay for eight days or however long is necessary. Lastly, Shafer objected to the focus on intent in the additional closing arguments and requested the paragraph on the requirement of a unanimous verdict of the jury instructions be read again to the jury. The trial court agreed to re-read the requested paragraph and overruled the other objections.

[¶ 19] Both parties presented additional closing arguments, after the trial court re-read the requested paragraph. The jury left the courtroom at approximately 9:00 a.m. to deliberate, returning at 11:00 a.m. with a verdict of guilty on both counts.

[¶ 20] Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *State v. Erickstad,* 2000 ND 202, ¶ 16, 620 N.W.2d 136. We review jury instructions as a whole and, if the instructions correctly advise the jury on the law, they are sufficient although part of the instructions, standing alone, may be insufficient or erroneous. *Id.* On appeal, we will reverse if an instruction is erroneous, it relates to a central subject in the case, and it affects a substantial right of the accused. *State v. Eldred,* 1997 ND 112, ¶ 33, 564 N.W.2d 283.

[¶ 21] Suggestions on assisting jurors at impasse are provided by N.D.R.Ct. 6.9:

If the jury informs the court it has reached an impasse, the court, after conferring with counsel, may invite the jurors to list in writing the divisive issues, which if addressed further in the courtroom might bring about a verdict. After receiving the jurors' written response, the judge, after conferring with

counsel, may direct further proceedings to occur as appropriate.

[¶ 22] The explanatory note of N.D.R.Ct. 6.9 explains the rule allows a judge to offer assistance in hopes of improving the chances of a verdict but cautions the judge not to be coercive, suggestive, or unduly intrusive. Patterned after an Arizona rule, the comments include the judge's response suggested by Arizona rules. These were the instructions requested by Shafer:

This instruction is offered to help your deliberations, not to force you to reach a verdict.

You may wish to identify areas of agreement and areas of disagreement. You may then wish to discuss the law and the evidence as they relate to areas of disagreement.

If you still have disagreement, you may wish to identify for the court and counsel which issues or questions of law or fact you would like counsel or the court to assist you with. If you elect this option, please list in writing the issues where further assistance might help bring about a verdict.

I do not wish or intend to force a verdict. We are merely trying to be responsive to your apparent need for help. If it is reasonably probable that you could reach a verdict as a result of this procedure, it would be wise to give it a try.

[¶ 23] The trial court did not read these particular instructions to the jury, stating the instruction did not adequately address the situation. Instead, the trial court found the next paragraph of the explanatory note for N.D.R.Ct. 6.9 more appropriate and particularly useful in this circumstance. The last paragraph of the explanatory note provides:

Some of the ways a judge may give assistance include: giving additional instructions, clarifying earlier instructions, directing the attorneys to make additional closing argument, reopening the evidence for limited purposes, or a combination of these measures. The court may decide it is not legally or practically possible to respond to the jury's concerns.

■ [¶ 24] Rule 6.9, N.D.R.Ct. is discretionary in nature. Rather than requiring the trial court to read specific instructions or to follow a set procedure, the language of N.D.R.Ct. 6.9 suggests the trial court "may invite the jurors to list in writing the divisive issues" and, after receiving the juror's written response and conferring with the parties, "may direct further proceedings to occur as appropriate." There is no requirement for a second indication from the jury that they have reached an impasse. The jury initially indicated they were unable to come to a unanimous decision. Further notes from the jury specified the particular issue on which they had questions. The trial court consulted with the parties to arrive at answers to the questions before they were given to the jury. By requiring the parties to add to their closing arguments on the one issue in contention, the trial court followed the suggestions contained in the explanatory note of N.D.R.Ct. 6.9. We see no error in the trial court answering the questions from the jury and allowing the parties to add to their closing arguments.

■ [¶ 25] The particular instructions contained in the explanatory note of N.D.R.Ct. 6.9 are not required but only recite a suggestion Arizona included in its rules. In response to requests from the jury, the trial court read the instructions as suggested by this Court in *State v. Champagne*, re-read parts of the jury instructions given initially, and clarified the verdict on a special verdict form. A trial

court is not required to instruct the jury in the exact language sought by a party if the court's instructions adequately and correctly inform the jury of the applicable law. *State v. Carlson*, 1997 ND 7, ¶ 16, 559 N.W.2d 802. The trial court did not err by not reading the exact instructions requested by Shafer.

[¶ 26] Shafer raised concerns about the trial court's additional comments to the jury when responding initially to their indication of an impasse, as well as further comments, on the grounds the comments were coercive. As we explained in *State v. Hartsoch*, 329 N.W.2d 367, 371 (N.D.1983), to determine if remarks by the trial court to the jury are improper or coercive, we examine them in light of the totality of the circumstances. In *Hartsoch*, the court's comments concerning the cost of a new trial were determined to be relatively mild in nature and they were followed immediately by "[i]f you can't [render a verdict], of course, you can't." *Id.* We determined the court's comments did not have a coercive effect. *Id.*

[¶ 27] In *State v. Hanson*, 53 N.D. 879, 207 N.W. 1000, 1002 (1926), the trial court, in response to how much time the jury had to come to a verdict, stated "[u]nlimited time. You have got all eternity, until some of you die, for you to arrive at a verdict. The court will expect you to work on the case until an agreement is reached." The Court held this comment was not coercive, considering the trial court's response to the jury foreman's next question "how long is our time specified?" The trial court indicated there was no fixed time for deliberation, but it would probably be a matter of days, however it was the trial court's intention the jury decide this matter. *Id.* This Court explained "[w]e do not believe it possible that intelligent and honest men could have been influenced by the remarks of the trial court to bring in a verdict contrary to their sense of duty." *Id.* Similarly, we do not believe the trial court directing the jury to "get in there and decide this one way or the other" or his reference to the eight days set aside for this trial had a coercive effect on the jury. Upon review of the instructions and comments given to the jury by the trial court as a whole, we conclude the trial court's actions were not clearly erroneous.

IV

[¶ 28] Shafer contends, as a matter of law, she cannot be imprisoned under N.D.C.C. § 14–14–22.1 because N.D.C.C. § 1–02–17 extinguishes the punishment of imprisonment for a repealed statute.

[¶ 29] A trial judge is allowed the widest range of discretion in fixing a criminal sentence; this court has no power to review the discretion of the sentencing court in fixing a term of imprisonment within the range authorized by statute. *State v. Steinbach*, 1998 ND 18, ¶ 24, 575 N.W.2d 193. "Appellate review of a criminal sentence is generally confined to whether the [trial] court acted within the sentencing limits prescribed by statute, or substantially relied upon an impermissible factor." *State v. Magnuson*, 1997 ND 228, ¶ 23, 571 N.W.2d 642. Statutory interpretation, however, is a question of law fully reviewable on appeal. *Ness v. Ward County Water Resource Dist.*, 1998 ND 191, ¶ 12, 585 N.W.2d 793.

[¶ 30] Shafer removed her children from the state in July 1998. The statute establishing the crime and penalty for removal of a child from the state in violation of a custody decree was repealed, effective August 1999. N.D.C.C. § 14–14–22.1. No replacement penalty existed in Chapter 14–14.1, N.D.C.C., effective August 1,

1999.[1] [¶ 31] Section 1–02–17, N.D.C.C., describes the effect the repeal of a statute has with respect to the penalty provision of the repealed statute. Referred to as a savings statute, N.D.C.C. § 1–02–17 generally "saves" any non-prison punishment for a violation of a statute committed prior to a repeal of that statute. The "saving" refers to saving the punishment from the application of the doctrine of abatement. *See State v. Cummings,* 386 N.W.2d 468, 470 n. 1 (N.D.1986). At common law, punishment for a statute that was repealed, after the commission of the act constituting the crime but prior to conviction, was abated. *Id.* The savings statute legislatively provided a way around the abatement and kept the punishment, in effect at the time the act was committed, in force through conviction. *Id.* We explained the purpose of savings statutes in *Cummings,* 386 N.W.2d at 470 n. 1 (N.D.1986):

> The common law doctrine of abatement holds that a repeal or amendment of a penal statute bars further prosecutions for violations of the statute which occurred before its repeal or amendment and abated all pending prosecutions which had not reached final judgment. Under the doctrine, a repeal or amendment was interpreted as indicative of a legislative intent that offenses prohibited by the repealed or amended statute, although committed while the statute was still in force, should no longer be regarded as criminal and therefore should not be punished under the repealed or amended statute.
>
> The doctrine of abatement, however, often produced unjust and undesired consequences. If a legislature repealed or amended and re-enacted a criminal statute with an increased penalty, a violator

of the former law could not be convicted under either the old or the new statute. Conviction under the former law was precluded by the doctrine of abatement and conviction under the new statute was constitutionally prohibited as an ex post facto law. In order to avoid this outcome, general saving clauses were enacted or specific saving provisions inserted in the repealing or amending act in order to preserve the state's ability to prosecute offenses committed under the former law.

[¶ 32] North Dakota's saving statute, N.D.C.C. § 1–02–17, saves "any penalty, fine, liability, or forfeiture;" however, our savings statute does not "save" the punishment of imprisonment:

> The repeal of any statute by the legislative assembly, or by the people through an initiated law, does not have the effect of releasing or extinguishing any penalty, fine, liability, or forfeiture incurred under such statute, but as to cases tried before, or subsequent to, the repeal of such statute, it has the effect of extinguishing any jail or prison sentence that may be, or that has been, imposed by reason of said law, unless the repealing act provides expressly that the penalties of imprisonment shall remain in force as to crimes committed in violation of such law prior to its repeal. In other respects, such act shall remain in force only for the purpose of the enforcement of such fine, penalty, or forfeiture.

[¶ 33] The trial court held N.D.C.C. § 14–14–22.1 was repealed, not amended. Therefore, N.D.C.C. § 1–02–17 applied. However, relying on *Ex parte Chambers,* 69 N.D. 309, 313, 285 N.W. 862, 864 (1939), the trial court concluded the provision of N.D.C.C. § 1–02–17 extinguishing a prison

**1.** Senate Bill No.2046 of the Fifty-seventh Legislative Assembly of North Dakota in 2001 provides a penalty for removal of child from state in violation of custody decree, similar to the repealed N.D.C.C. § 14–14–22.1. The effective date of this penalty is March 19, 2001.

sentence for violation of a repealed statute was an unconstitutional exercise of the power to pardon by the legislature. Because the power to pardon is exclusive to the Governor, the trial court reasoned, N.D.C.C. § 1–02–17 cannot eliminate the punishment of imprisonment without constituting an invalid exercise of legislative clemency. The State invites us to adopt the trial court's all encompassing application of *Chambers* to invalidate the exclusion of imprisonment from the "savings" statute, N.D.C.C. § 1–02–17. We decline the invitation for the reasons we now explain.

[¶ 34] *Chambers* is substantially different from this case. Chambers was convicted of engaging in liquor traffic. *Chambers,* 69 N.D. at 311, 285 N.W. at 862. The crime was committed on November 27, 1935. 69 N.D. at 312, 285 N.W. at 863. The law making engaging in liquor traffic illegal was repealed by general election on November 3, 1936. *Id.* At that time, the forerunner to N.D.C.C. § 1–02–17, N.D. Comp. Laws of 1913 § 7316, "saved" the punishment as it existed at the time of the crime, despite the repeal of the law prior to Chamber's conviction and sentencing in March 1937. *Id.* At that time, the savings clause saved all penalties, including imprisonment. *Id.* The savings statute in place at the time of Chamber's crime and conviction provided:

> The repeal of any statute by the legislative assembly shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability. N.D. Comp. Laws 1913 § 7316 (1913).

*See State v. Houge,* 67 N.D. 251, 271 N.W. 677 (1937).

[¶ 35] In 1939, two years after Chambers was convicted and sentenced, the legislature amended the savings statute to save penalties, forfeiture or liability, but specifically extinguished prison sentences. *Chambers,* 69 N.D. at 312, 285 N.W. at 863. The 1939 amended version of N.D. Comp. Laws 1913 § 7316 provided:

> The repeal of any statute by the Legislative Assembly or by the people by an initiated law, shall not have the effect to release or extinguish any penalty, fine, liability, or forfeiture incurred under such statute, but as to cases tried before, or subsequent to, the repeal of such statute, it shall have the effect of extinguishing any jail or prison sentence, that may be, or has been, imposed by reason of said law, unless the repealing act shall expressly provide that the penalties of imprisonment shall remain in force as to crimes committed in violation of such law prior to its repeal. In other respects, such act shall remain in force only for the purpose of the enforcement of such fine, penalty, or forfeiture.[2] 1939 N.D. Sess. Laws ch. 134, § 1 (effective March 18, 1939).

[¶ 36] The Court held in *Chambers,* 69 N.D. at 316, 285 N.W. at 865, the legislature had overstepped its bounds and infringed on the exclusive pardoning power of the Governor.

> Applied to cases in which judgment of conviction had been had and sentence pronounced prior to the effective date of said act, it is an extension of legislative

---

**2.** The substance of the 1939 amended version is the same as the current N.D.C.C. § 1–02–

17.

clemency. It would operate to commute that portion of any sentence of imprisonment, imposed under the terms of a repealed statute, which remained to be served after the effective date of said act. This is clearly an exercise of the pardoning power. *Chambers,* 69 N.D. at 313, 285 N.W. at 864.

[¶ 37] The Court further explained the narrow scope of its holding in *Chambers,* 69 N.D. at 316, 285 N.W. at 865:

It follows that the 1939 amendment and re-enactment of Section 7316, Comp. Laws of N.D.1913 (House Bill 259), *in so far as it attempts to extinguish the sentences to imprisonment of persons against whom judgment of conviction had been had in the trial court prior to the effective date of such act,* conflicts with Section 76 of the State Constitution as amended by Article 3 of Amendments to the Constitution and to that extent is invalid. (Emphasis added).

[¶ 38] In *Chambers* this Court determined the savings statute was invalid to the extent it extinguished the prison sentences of persons who were convicted prior to the effective date of the revised savings statute. *Id.* The holding is limited to the legislative amendment of the savings statute that attempted to reach back two years and override the old savings statute, in effect at the time of Chamber's conviction and sentencing, to extinguish the punishment of imprisonment.

[¶ 39] In contrast, the savings statute in place at the time of Shafer's crime and conviction extinguished prison penalties for statutes repealed after the commission of the violation but before the conviction. N.D.C.C. § 1–02–17. It does not follow that the application of N.D.C.C. § 1–02–17 to eliminate prison as an option for punishment of Shafer for acts she committed prior to the repeal of N.D.C.C. § 14–14–22.1 but for which she was tried and con-

victed after the repeal, is invalid as an unconstitutional exercise by the legislature of the power to pardon. The savings clause as it now reads was in effect at the time Shafer removed the children and at the time of her conviction. The clause in N.D.C.C. § 1–02–17 extinguishes prison sentences if the statute making an act a crime is repealed. It now applies to crimes committed prior to the repeal but for which a conviction is entered after the repeal. It therefore is not a pardon because no conviction was entered at the time of repeal of the statute making the act an offense. The trial court's interpretation of *Chambers* is too broad.

[¶ 40] An abatement of punishment for an act that occurred when a law was in effect but for which no conviction was entered until after the law was repealed, cannot be deemed an unconstitutional pardon. If it were, there would be no need for savings statutes, because, any abatement by the legislature, or by the judiciary at common law, would be an invalid pardon.

[¶ 41] Previously, we held *Chambers* did not invalidate the retrospective application of legislation ameliorating criminal punishment. *State v. Cummings,* 386 N.W.2d 468, 472, n. 2 (N.D.1986). In *Cummings,* an amelioration of a prison sentence was not an invalid exercise of the power to pardon. *Id.*

[¶ 42] Recently in *State v. Burr,* 1999 ND 143, ¶ 11, 598 N.W.2d 147, we confirmed the legislature is free to apply statutes retroactively unless doing so would result in ex post facto application. Statutes generally are not retroactive unless expressly declared so by the legislature. *State v. Kaufman,* 310 N.W.2d 709, 715 (N.D.1981). However, in *Cummings,* 386 N.W.2d at 472, we departed from that principle because the statute in question

involved an ameliorating amendment to a criminal statute. We created a narrow exception to the general rule for ameliorating penal legislation. *Midwest Property Recovery, Inc. v. Job Service of North Dakota,* 475 N.W.2d 918, 921 (N.D.1991). In *Cummings,* 386 N.W.2d at 472, we concluded "unless otherwise indicated by the Legislature, an ameliorating amendment to a criminal statute is reflective of the Legislature's determination that the lesser punishment is the appropriate penalty for the offense." Because we found a "compelling inference" that the legislature intended to apply retroactively a penal statute that reduced punishment, we created the exception for ameliorating penal legislation. *Id.*

[¶ 43] Cummings committed the offense of driving under suspension on June 15, 1985, after the passage of the 1985 amendment to N.D.C.C. § 39–06–42, but prior to its effective date of July 1, 1985. *Cummings,* 386 N.W.2d at 470. The 1985 statute reduced the mandatory minimum penalty from fifteen days to four days. *Id.* The trial court sentenced Cummings to fifteen days, according to the statute in effect when Cummings committed the offense. *Id.* On appeal, we reduced the sentence to four days, in accordance with the 1985 statute mitigating the punishment. *Id.* We concluded we could rationally infer legislative intent from the amendment itself that the legislature intended the 1985 reduced sentence to apply.

There is a compelling inference that the 1985 Legislature, by reducing the mandatory minimum penalty for violation of NDCC § 39–06–42 from fifteen days' imprisonment to four consecutive days' incarceration, determined that the former penalty was too harsh and that the latter and lighter punishment was the appropriate penalty for violations of that statute.

That the Legislature had such an intent seems obvious; nothing is gained by imposing a more severe punishment after the Legislature has determined that a lighter penalty is appropriate. The excess in punishment can serve no other purpose than to satisfy a desire for vengeance, a legislative motivation we will not presume.

We conclude that, unless otherwise indicated by the Legislature, an ameliorating amendment to a criminal statute is reflective of the Legislature's determination that the lesser punishment is the appropriate penalty for the offense. Consequently, while we reaffirm today, as we did recently in *City of Mandan v. Mi–Jon News, Inc.,* 381 N.W.2d 540 (N.D.1986), the general rule that statutes are not retroactive unless expressly declared so by the Legislature, we also hold that an exception should be made to this general rule in the case of ameliorating penal legislation. It follows that the 1985 ameliorating statute should be applied to offenses committed prior to its effective date, provided that the defendant has not yet been finally convicted of the offense. *Id.* at 472.

[¶ 44] We clarified in a footnote that although "final conviction" is difficult to define exactly, it was clear Cummings had not been finally convicted "because his direct appeal from his judgment of conviction and sentence had not been ruled on by this Court." *Id.* at 472 n. 2. Therefore, the prohibition against legislation lessening punishment as an infringement on the executive power to pardon in *Chambers,* did not apply to the situation in *Cummings.* *Id.*

[¶ 45] Although it does not interpret N.D.C.C. § 1–02–17, *Cummings* does stand for the proposition that the legislature can ameliorate punishment of imprisonment and the amelioration can be retro-

actively applied prior to final conviction without infringing on the executive branch's exclusive power to pardon. Interpreting *Chambers* to declare invalid any exercise of legislative mitigation of punishment applied retroactively is taking too broad of a sweep, inconsistent with our prior case law and inconsistent with *Chambers*.

[¶ 46] Section 1–02–17, N.D.C.C., validly applies to the repeal of N.D.C.C. § 14–14–22.1. Therefore, the punishment of imprisonment for Shafer's violation of N.D.C.C. § 14–14–22.1 is extinguished.

[¶ 47] Shafer alternatively asserts the savings statute N.D.C.C. § 1–02–17 does not apply to this case because N.D.C.C. § 14–14–22.1 was amended, not repealed. In *Kittelson v. Havener*, 239 N.W.2d 803, 806 (N.D.1976), we held North Dakota's general saving statute, N.D.C.C. § 1–02–17, applies only to repealing legislation, and not to amendments. We also noted "serious reservations whether or not the provisions of this section apply to the instances where a statute was repealed and replaced by another Act even though the substituted Act differed somewhat from the repealed statute." *Id.* Because N.D.C.C. ch. 14–14 was a 1969 codification of the Uniform Child Custody Jurisdiction Act which in 1999 was amended to conform to the Uniform Child Custody Jurisdiction and Enforcement Act, codified as N.D.C.C. ch.14–14.1, Shafer claims N.D.C.C. § 14–14–22.1 was not repealed, but only amended. Shafer maintains the savings clause of N.D.C.C. § 1–02–17 does not apply; therefore, the common law doctrine of abatement applies. We affirm the trial court's finding N.D.C.C. § 14–14–22.1 was repealed and we agree the saving statute of N.D.C.C. § 1–02–17 applies.

[¶ 48] Shafer also argues she has a right to invoke her right to be sentenced under ch. 14–14.1 pursuant to N.D.C.C. § 12.1–01–01(3). Because we decide N.D.C.C. § 1–02–17 applies to extinguish the penalty of imprisonment, we need not further consider this argument.

[¶ 49] Shafer also claims dismissal of the criminal prosecution is appropriate because prosecution is contrary to the legislative intent and the federal laws to which North Dakota's state laws conform. Our primary objective in construing a statute is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary, and commonly understood meaning. *State ex rel. Heitkamp v. Family Life Services, Inc.*, 2000 ND 166, ¶ 7, 616 N.W.2d 826. Although courts may resort to extrinsic aids to interpret a statute if it is ambiguous, we look first to the statutory language, and if the language is clear and unambiguous, the legislative intent is presumed clear from the face of the statute. *N.D. Securities Commissioner v. Juran and Moody, Inc.*, 2000 ND 136, ¶ 6, 613 N.W.2d 503. When a statute is clear and unambiguous on its face, we will not disregard the letter of the statute under the pretext of pursuing its spirit, because the legislative intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05; *Lawrence v. North Dakota Workers Compensation Bureau*, 2000 ND 60, ¶ 19, 608 N.W.2d 254. Section 14–14–22.1, N.D.C.C., is clear and unambiguous on its face and, giving the words of the statute their plain, ordinary, and commonly understood meaning, demonstrated the legislature's intent to provide a penalty for removal of a child from the state with the intention to deny another person's rights under an existing custody decree. Section 1–02–17, N.D.C.C., is equally clear and unambiguous in saving the penalties and

fines but not the imprisonment portion of that repealed statute.

## V

[¶ 50]  We affirm the verdicts but remand for re-sentencing in accordance with this opinion.

[¶ 51] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.